# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

NATURAL RESOURCES DEFENSE )
COUNCIL, INC., and PUBLIC CITIZEN, )
INC., )
     )
         Plaintiffs, )
      v. )     08 Civ. 10507 (PGG)
     )
U.S. CONSUMER PRODUCT )
SAFETY COMMISSION, )
     )
         Defendant. )
_____)


## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Mitchell S. Bernard (MB 5823)
Aaron Colangelo
Avinash Kar
Natural Resources Defense Council
40 West 20th Street
New York, New York 10011
(212) 727-2700
(212) 727-1773 (fax)

Counsel for Plaintiffs

Of Counsel:

Brian Wolfman
Public Citizen Litigation Group
1600 20th Street, NW
Washington, DC 20007


Dated:  December 17, 2008

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

INTRODUCTION ............................................................................................................1

STATUTORY FRAMEWORK..........................................................................................1

FACTUAL BACKGROUND.............................................................................................3

    Toxic Effects of Phthalates ........................................................................................3

    The Challenged Agency Action ................................................................................4

SUMMARY OF ARGUMENT .........................................................................................7

ARGUMENT ....................................................................................................................8

I.     Standard of Review ................................................................................................8

II.    The CPSC Decision Is Contrary to Law ...............................................................9

        A.    The CPSIA Bans All Sales of Children's Products Containing Phthalates
             Beginning on the Effective Date .....................................................................9

        B.    The CPSC's Interpretation of the Statute Is Incorrect ...................................11

             1.    Restrictions on Consumer Product Safety Standards Promulgated by the
                  CPSC Do Not Apply to Standards Legislated by Congress ....................12

             2.    Congress Designated the Phthalate Ban a Consumer Product Safety
                  Standard to Adopt the Preemption Regime that Applies to Such
                  Standards .................................................................................................13

             3.    Congress Imposed a Clear, Forward-Looking Ban on Phthalates in
                  Children's Products that Does Not Implicate Retroactivity Concerns ......15

III.   The Court Has Jurisdiction to Adjudicate Plaintiffs' Claims .....................................17

        A.    Plaintiffs Have Standing to Challenge the CPSC Decision ...........................17

        B.    Plaintiffs Challenge Final Agency Action.......................................................19

IV.   Plaintiffs Require Prompt Resolution of Their Claim for Relief..................................22

CONCLUSION..................................................................................................................23

# TABLE OF AUTHORITIES

## CASES

Abbott Labs. v. Gardner,
387 U.S. 136 (1967)...............................................................................................20

Almendarez-Torres v. U.S.,
523 U.S. 224 (1998) .............................................................................................15

Appalachian Power Co. v. Envtl. Prot. Agency,
208 F.3d 1015 (D.C. Cir. 2000) ......................................................................21, 22

Barrick Goldstrike Mines Inc. v. Browner,
 215 F.3d 45 (D.C. Cir. 2000) ..............................................................................20

Baur v. Veneman,
352 F.3d 625 (2d Cir. 2003)..................................................................................18

Bennett v. Spear,
520 U.S. 154 (1997)..........................................................................................19, 20

Bldg. & Const. Trades Council v. Downtown Dev., Inc.,
448 F.3d 138 (2d Cir. 2006) .............................................................................17, 19

Celotex Corp. v. Catrett,
477 U.S. 317 (1986)................................................................................................9

Chevron U.S.A., Inc. v. Natural Res. Def. Council,
467 U.S. 837 (1984)................................................................................................8

Chicago & Southern Air Lines, Inc. v. Waterman Steamship Corp.,
333 U.S. 103 (1948)................................................................................................21

Ciba-Geigy Corp. v. Envtl. Prot. Agency,
801 F.2d 430 (D.C. Cir. 1986)................................................................................20

Colaio v. Feinberg,
262 F. Supp. 2d 273 (S.D.N.Y. 2003).................................. ..............................19, 20

CropLife America v. Envtl. Prot. Agency,
329 F.3d 876 (D.C. Cir. 2003)...............................................................................21

De La Mota v. U.S. Dept. of Educ.,
Civ. No 02-4276, 2003 WL 21919774 (S.D.N.Y. Aug 12, 2003) .........................21

Dep't of Hous. & Urban Dev. v. Rucker,
535 U.S. 125 (2002) .................................................................................13

Dolan v. U.S. Postal Serv.,
546 U.S. 481 (2006) .................................................................................11

Food & Drug Admin. v. Brown & Williamson Tobacco Corp.,
529 U.S. 120 (2000)..................................................................................13

Fed. Election Comm'n v. Political Contributions Data, Inc.,
943 F.2d 190 (2d Cir. 1991).................................................... .................11

Friends of Gateway v. Slater,
257 F.3d 74 (2d Cir. 2001)........................................................................10

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,
528 U.S. 167 (2000) .................................................................17, 18, 19

Guilbert v. Gardner,
480 F.3d 140 (2d Cir. 2007) .......................................................................9

Her Majesty the Queen v. Envtl. Prot. Agency,
912 F.2d 1525 (D.C. Cir. 1990) .........................................................21, 22

Hunt v. Wash. State Apple Adver. Comm'n,
432 U.S. 333 (1977)..................................................................................17

Jaramillo v. Weyerhaeuser Co.,
536 F.3d 140 (2d Cir. 2008) .......................................................................9

LaFleur v. Whitman,
300 F.3d 256 (2d Cir. 2002)......................................................................18

Landgraf v. USI Film Prods.,
511 U.S. 244 (1994) ............................................................................15, 16

Lujan v. Defenders of Wildlife,
504 U.S. 555 (1992)..................................................................................17

Maislin Indus. v. Primary Steel, Inc.,
497 U.S. 116 (1999) ...................................................................................9

McKinnon v. Skil Corp.,
638 F.2d 270 (1st Cir. 1981) .....................................................................10

N.Y. Pub. Interest Research Group v. Whitman,
321 F.3d 316 (2d Cir. 2003) ........................................................18

OSG Bulk Ships, Inc. v. United States,
132 F.3d 808 (D.C. Cir. 1998) .....................................................20

Pierce & Stevens Chem. Corp. v. U.S. Consumer Prod. Safety Comm'n,
585 F.2d 1382 (2d Cir. 1978) .......................................................10

Porter v. Nussle,
534 U.S. 516 (2002) .....................................................................15

Rock of Ages Corp. v. Sec'y of Labor,
170 F.3d 148 (2d Cir. 1999) .........................................................21

Rombough v. Fed. Aviation Admin.,
594 F.2d 893 (2d Cir. 1979) .........................................................21

TRW Inc. v. Andrews,
534 U.S. 19 (2004) .......................................................................13

U.S. v. Alpers,
338 U.S. 680 (1950).......................................................................13

U.S. v. The Anaconda Co.,
445 F. Supp. 486 (D.D.C. 1977)……………………………………..11

U.S. Gypsum Co. v. Muszynski,
161 F. Supp. 2d 289 (S.D.N.Y. 2001) ....................................20, 22

Waterkeeper Alliance v. Envtl. Prot. Agency,
399 F.3d 486 (2d Cir. 2005) .......................................................8, 9

Whitman v. American Trucking Ass'ns,
531 U.S. 457 (2001) .....................................................................13

## STATUTES AND REGULATIONS

5 U.S.C. § 704 ...........................................................................8, 19

5 U.S.C. § 706(2)(A) .......................................................................8

15 U.S.C. § 1261 note (b)(1)(B) ...................................................14

15 U.S.C. § 1278a ......................................................................2, 16

15 U.S.C. § 2051 ...................................................................................10

15 U.S.C § 2051(b) ......................................................................10, 18, 19

15 U.S.C § 2052(a)(6) ...........................................................................12

15 U.S.C. § 2056(a) ...............................................................................12

15 U.S.C. § 2057c .................................................................................2, 4

15 U.S.C § 2057c(a) .......................................................................*passim*

15 U.S.C § 2057c(b)(1) ..................................................................*passim*

15 U.S.C § 2057c(b)(2) ...........................................................................2

15 U.S.C § 2057c(b)(3) ...........................................................................2

15 U.S.C § 2057c(d) .......................................................................2, 7, 11, 15

15 U.S.C § 2057c(e)(1)(B) ......................................................................2

15 U.S.C § 2057c(e)(1)(C) ......................................................................2

15 U.S.C § 2058(a)(1) ............................................................................12

15 U.S.C § 2058(b)(2) ............................................................................12

15 U.S.C. § 2058(g)(1) .............................................................5, 11, 12, 13

15 U.S.C § 2058(h) .............................................................................12, 13

15 U.S.C § 2075(a) ..............................................................................3, 14

28 U.S.C. § 1657(a) ................................................................................23

16 C.F.R. § 1000.10(a) .............................................................................5

Pub. L. No. 110-278, 122 Stat. 2602, 2602 (2008) ..............................10

Pub. L. No. 101-608, 104 Stat. 3110, 3123 (1990) ...............................10

## FEDERAL RULES

Fed. R. Civ. P. 56(c) ................................................................................9

## LEGISLATIVE HISTORY

154 Cong. Rec. S7868 (July 31, 2008) (Statement of Sen. Inouye)...........................................2

154 Cong. Rec. S7874 (July 31, 2008) (Statement of Sen. Boxer) .......................................14

154 Cong. Rec. S7876 (July 31, 2008) (Statement of Sen. Boxer) .......................................15

154 Cong. Rec. H7580 (July 30, 2008) (Statement of Rep. Waxman) ..................................15

H. Rep. No. 98-985 (1984), *reprinted at* U.S.C.C.A.N. 5779, 5784 …………………………...23

## OTHER AUTHORITIES

2008 Wash. Legis. Serv. Ch. 288 ………………..…………………………………………14

**INTRODUCTION**

Chemicals known as phthalates (pronounced "THAL-ates") are used to soften plastics in children's toys and other consumer products. Human exposure to phthalates during sensitive periods of development can cause permanent reproductive and other harm. In the Consumer Product Safety Improvement Act ("CPSIA"), enacted on August 14, 2008, Congress banned the manufacture, sale, distribution, and import of children's products containing more than 0.1 percent of any of six listed phthalates. This ban goes into effect on February 10, 2009.

By letter of its General Counsel dated November 17, 2008, and in a series of subsequent public pronouncements, the U.S. Consumer Product Safety Commission ("CPSC") declared that the phthalate ban would not apply to any children's product manufactured before the effective date of February 10, 2009. The CPSC decision thus purports to authorize the sale of banned children's products after the statute's effective date, despite Congress's clear prohibition of such sales. This decision will cause harm to individuals exposed to these phthalates in children's products and generate consumer confusion about which products comply with the ban.

The CPSC decision disregards the plain language of the CPSIA and frustrates the express purposes of the statute. Accordingly, the decision constitutes agency action not in accordance with law, in violation of the Administrative Procedure Act ("APA"). Prompt resolution of this case is appropriate and necessary to effectuate the will of Congress, protect public health, and prevent potentially significant market disruption. The Court should declare unlawful and set aside the CPSC decision as soon as possible and, in any event, before February 10, 2009.

**STATUTORY FRAMEWORK**

Congress enacted the CPSIA, Public Law 110-314, 122 Stat. 3016, on August 14, 2008. The CPSIA amends several existing consumer protection laws, including the Consumer Product

Safety Act ("CPSA") and the Federal Hazardous Substances Act ("FHSA"), to limit exposure to toxic chemicals in children's products. *See* 15 U.S.C. §§ 1278a (lead), 2057c (phthalates); 154 Cong. Rec. S7868 (daily ed. July 31, 2008) (statement of Sen. Inouye).

Among other things, the CPSIA permanently bans the manufacture, sale, distribution, or import, beginning February 10, 2009, of children's toys and child care articles that contain more than a set limit of any of three different phthalates, known as DEHP, DBP, and BBP.[1] 15 U.S.C. § 2057c(a). Specifically, the statute states: "Beginning on the date that is 180 days after August 14, 2008, it shall be unlawful for any person to manufacture for sale, offer for sale, distribute in commerce, or import into the United States any children's toy or child care article that contains concentrations of more than 0.1 percent of" DEHP, DBP, or BBP. *Id.*

The CPSIA also bans the manufacture, sale, distribution, or import, beginning the same date, of a subset of children's toys (those that can be placed in a child's mouth) and child care articles that contain more than 0.1 percent of any of three other phthalates – DINP, DIDP, or DnOP. *Id.* § 2057c(b)(1). This ban applies indefinitely unless a future CPSC rule, relying on the report of an independent panel of scientific experts, finds the ban unnecessary to protect children or other susceptible individuals. *Id.* §§ 2057c(b)(2), (b)(3). Such rule must be promulgated between February and August 2011, and so this ban will be in effect at least until then. *Id.* §§ 2057c(b)(2), (b)(3).

The CPSIA states that these phthalate bans shall be considered "consumer product safety standards." *Id.* § 2057c(d). As such, the phthalate bans preempt inconsistent state regulation of

---

[1] "Children's toy" is defined to mean "a consumer product designed or intended by the manufacturer for a child 12 years of age or younger for use by the child when the child plays." 15 U.S.C. § 2057c(e)(1)(B). "Child care article" is defined to mean "a consumer product designed or intended by the manufacturer to facilitate sleep or the feeding of children age 3 or younger, or to help such children with sucking or teething." *Id.* § 2057c(e)(1)(C).

the same products (children's toys and child care articles), but not state regulation of phthalates in other consumer products.  *Id.* § 2075(a).

## FACTUAL BACKGROUND

Toxic Effects of Phthalates

Phthalates are a class of chemicals that soften plastics.  Declaration of Dr. Sarah Janssen ¶ 11 ("Janssen Dec.").  They are common in toys and other child care products.  *Id.*  Phthalates leach from plastics, creating exposure through the mouth, skin, and inhalation or ingestion of dust particles to which they bind.  *Id.* ¶ 23.

Exposure to the phthalates banned by Congress, especially at critical developmental ages, may cause severe and permanent harm to human health.  *Id.* ¶¶ 17, 26.  Phthalates are endocrine disruptors that interfere with the production of sex hormones, and epidemiological evidence links the phthalates DEHP, DBP, DINP, and BBP to human reproductive harm.  *Id.* ¶ 14.  Numerous reliable animal studies have established the harm phthalates can cause to the development and functioning of reproductive systems, and more recent research on human subjects has produced similar results.  *Id.* ¶ 18.  Interference with testosterone production in males can alter the onset of puberty and produce poor sperm quality, infertility, and testicular cancer.  *Id.* ¶ 15.  Although the effects of phthalates on women and girls are less well-studied than those on males, animal studies link fetal exposure to DBP with alterations in female sex hormones, early puberty, and abnormal growth of uterine tissue.  *Id.* ¶ 20.  Studies also link DEHP to growth of human breast cancer cells.  *Id.* ¶ 21.

Interference with natural hormone levels is particularly problematic during infancy and childhood.  *Id.* ¶ 14.  Due to their low body weight, tendency to place objects, including toys,

into their mouths, and immature detoxification systems, infants and children are particularly susceptible to the toxic effects of phthalates. *Id.* ¶ 17.

Virtually all people in the United States have measureable levels of phthalates in their bodies, with the highest levels of DEHP, DBP, and BBP measured in children aged 6 to 11. *Id.* ¶ 12. Infants also appear to be highly exposed. *Id.* Scientific studies have shown that phthalates act in an additive manner, such that small exposures to different phthalates can cause as much harm as exposure to a large dose of a single phthalate. *Id.* ¶ 24. Every exposure to a phthalate increases the likelihood that the exposed individual will suffer adverse health effects. *Id.* ¶ 25. This underscores the importance of reducing exposures to these toxins, especially for infants and children. *Id.* ¶¶ 22, 17.

Substitute materials are available to produce the children's toys and child care articles that now contain phthalates. *Id.* ¶ 25. Postponing implementation of the Congressional ban on phthalates will generate and prolong avoidable exposures that may cause irreparable medical injury to infants and children. *Id.* ¶ 28.

The Challenged Agency Action

In a letter dated November 13, 2008, on behalf of unnamed clients, counsel at the law firm Arent Fox LLP requested that the CPSC "consider not applying the phthalates restrictions set forth in Section 108 of the CPSIA retroactively to inventory as of February 10, 2009."[2] Declaration of Mitchell S. Bernard Exh. A at 1 ("Bernard Dec."). The Arent Fox letter asked the CPSC to "permit industry to sell through any inventory" that may contain levels of phthalates "in excess of limits to be imposed as of February 10, 2009." *Id.* Exh. A at 4.

_____

[2] The phthalate ban in 15 U.S.C. § 2057c is also referred to by its Public Law number as "Section 108" of the CPSIA.

In a decision published two business days later, on November 17, 2008, the CPSC General Counsel agreed. *Id*. Exh. B (the "CPSC decision"). The CPSC decision concludes that the statute's ban on phthalates in children's products is not "retroactive" and, therefore, products manufactured before the ban date can be sold indefinitely after that date. *Id*. Exh. B. The decision acknowledges that, beginning on the effective date, the law "makes it a prohibited act to offer products for sale" that contain the listed phthalates. *Id*. Exh. B at 1. However, it points to the CPSIA's designation of the phthalate ban as a "consumer product safety standard" and notes that such standards, when promulgated by the agency, only apply to products manufactured after the effective date of the standard. *Id*. Exh. B at 1-2 (citing 15 U.S.C. § 2058(g)(1)). The CPSC therefore found that Congress failed to provide a "clear statement of unambiguous intent" to apply the phthalate ban "retroactively." *Id*. Exh. B at 2.

The day after the November 17 decision was published, CPSC Chairman Nancy Nord, speaking at an international consumer product safety meeting, publicly confirmed that the CPSC would not apply the phthalate ban to inventory manufactured before the ban date.[3] *Id*. Exh. C. The CPSC reiterated its decision in a posting on the agency's website on December 4, 2008. *Id*. Exh. D. In a page titled "Consumer Product Safety Improvement Act, Section 108: Products Containing Certain Phthalates," the CPSC published the following question and answer:

> When does the phthalates ban go into effect for children's toys and child care articles and does it apply to inventory in existence on February 10, 2009?
>
> On February 10, 2009, DEHP, DBP, and BBP are permanently banned, and DINP, DIDP, and DnOP are banned on an interim basis, for children's toys or child care articles as defined in section 108 of the CPSIA. *The ban on the six specified phthalates in section 108 of the CPSIA only applies to products that are manufactured on or after February 10, 2009.*

_____

[3] "The Chairman is the principal executive officer of the Commission and, subject to the general policies of the Commission . . . , he or she exercises all of the executive and administrative functions of the Commission." 16 C.F.R. § 1000.10(a).

*Id.* Exh. D. (emphasis added).

Members of Congress who played key roles in passage of the CPSIA promptly criticized the CPSC decision as violating the statute's plain language and Congressional intent. In a November 21, 2008 letter to the CPSC, Senator Barbara Boxer stated that the CPSC decision "to allow the continued sale of children's toys and child care products that contain harmful phthalates beyond February 10, 2009 violates the clear language of that Act." *Id.* Exh. E. In a November 24, 2008 letter to the CPSC, Senator Dianne Feinstein – the author of the phthalate ban provision that ultimately was enacted in the CPSIA – and Representatives Henry Waxman and Janice D. Schakowsky stated that the CPSC decision "is directly contrary to the plain language of the CPSIA," and that the phthalate ban applies "to all inventory sold after February 10, 2009." *Id.* Exh. F at 1, 3.

The CPSC has disregarded three direct requests to reverse its decision. First, Senator Feinstein's November 24, 2008 letter expressly asks the CPSC to "overturn" the "flawed analysis" in its decision and "clarify that no toy or children's product containing more than .1% of certain phthalates may be legally sold after February 10, 2009." *Id.* Exh. F at 2. Second, in a November 28, 2008 letter to the CPSC, Connecticut Attorney General Richard Blumenthal requested the CPSC's "explicit determination" that, after February 10, 2009, "no retailer may sell any children's toy or child care article" that contains phthalates in concentrations exceeding the set limits. *Id.* Exh. G at 1. Third, by letter dated December 2, 2008, Plaintiff Natural Resources Defense Council ("NRDC") petitioned the CPSC to revoke its decision. *Id.* Exh. H. To date, the CPSC has failed to provide a substantive response to any of these requests. *Id.* ¶ 12.[4]

---

[4] The CPSC's Office of the Secretary acknowledged receipt of NRDC's petition on December 8, 2008. Bernard Dec. Exh. I. The Secretary stated that the CPSC's Office of General Counsel

## SUMMARY OF ARGUMENT

The CPSC decision rewrites the statute Congress wrote and defeats the law's essential purposes. In the CPSIA, Congress banned the sale, beginning February 10, 2009, of children's products containing more than the permissible concentration of designated phthalates. The CPSC decision would allow the sale of such products after the effective date of the ban, so long as they were manufactured before that date. If Congress had meant to ban only the manufacture of children's products containing phthalates, then it would have done so. Instead, it made it unlawful to "manufacture for sale, *offer for sale*, *distribute in commerce*, or import" any such good. 15 U.S.C. §§ 2057c(a), (b)(1) (emphasis added). The CPSC decision violates the plain terms of the law.

The indisputable intent of the CPSIA is to prevent children's exposure to phthalates in toys and child care articles beginning February 10, 2009, and to assure parents and other consumers that such products are safe to purchase and use. The CPSC decision will prolong children's exposure to banned toxins and undermine consumer confidence, thus generating precisely the harms Congress intended to prevent. The Court should not countenance an interpretation of the statute that defeats the essential purposes of the law.

The CPSC decision is based on the statute's reference to the phthalate ban as a "consumer product safety standard" and a separate provision that limits the application of such standards to products manufactured after the effective date. *Id*. § 2057c(d). That separate provision, however, applies only to standards promulgated by the agency through rulemaking,

---

would take 30 days to determine whether NRDC's request "is appropriate for docketing as a petition" and an additional 180 days to prepare a "briefing memorandum" for the CPSC, before providing a response to NRDC. *Id*. Exh. I (referencing attachment). This would delay a substantive response to NRDC's petition for at least 210 days, well past the February 10, 2009 effective date of the phthalate ban.

not to standards legislated by Congress.  The more natural and coherent reading of the law –
supported by the title of the relevant subsection and the legislative history – is that Congress
characterized the phthalate ban as a consumer product safety standard to adopt the preemption
regime that applies to such standards and preserve the rights of states to regulate phthalates in
other consumer products not addressed by the federal law.

In addition, the CPSC's application of "retroactivity" caselaw is misplaced.  The
phthalate ban is not retroactive; it restricts future conduct beginning 180 days from the date of
enactment and unambiguously prohibits sale or distribution in commerce after that date.  Even if
this forward-looking prohibition were considered to be "retroactive," Congress's intent is clear
and overcomes the presumption against retroactivity.

The CPSC decision is final action subject to judicial review now.  The Court should hold
unlawful and set aside the CPSC decision no later than February 10, 2009.

## ARGUMENT

I.    Standard of Review.

This case involves a straightforward question of statutory interpretation.  If Congress has
"directly spoken to the precise question at issue" and the statutory language is clear, that
language controls.  *Chevron U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842 (1984);
*see also Waterkeeper Alliance v. Envtl. Prot. Agency*, 399 F.3d 486, 497 (2d Cir. 2005).

The APA provides for judicial review in district court of "final agency action for which
there is no other adequate remedy in a court."  5 U.S.C. § 704.  The Court must "hold unlawful
and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not
in accordance with law."  *Id.* § 706(2)(A).  Agency action is not in accordance with law if it

violates the plain language of the statute. *See, e.g., Waterkeeper Alliance*, 399 F.3d at 504

(agency action unlawful where it "violates the plain dictates" of the statute).

Summary judgment is appropriate if "there is no genuine issue as to any material fact"

and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145

(2d Cir. 2008). A "genuine issue" as to material facts exists only "where the evidence, viewed in

the light most favorable to the nonmoving party, is such that a reasonable jury could decide in

that party's favor." *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007).

II.    The CPSC Decision Is Contrary to Law.

    A.    The CPSIA Bans All Sales of Children's Products Containing Phthalates
        Beginning on the Effective Date.

The CPSC decision authorizes the sale of banned children's products on and after

February 10, 2009, despite Congress's express prohibition of any sale as of that date. The

CPSIA declares that "it shall be unlawful for any person to manufacture for sale, *offer for sale,*

*distribute in commerce*, or import into the United States" specified children's products

containing more than 0.1 percent of any of the six listed phthalates. 15 U.S.C. §§ 2057c(a),

(b)(1) (emphasis added). This is an unequivocal ban on sale beginning on the designated date,

regardless of the date of manufacture. The CPSC's decision to permit the sale of children's

products containing phthalates after the effective ban date violates the law. *Maislin Indus. v.*

*Primary Steel, Inc.*, 497 U.S. 116, 134-35 (1999) (an agency "does not have the power to adopt a

policy that directly conflicts with its governing statute"); *Waterkeeper Alliance*, 399 F.3d at 506

("Principles of statutory construction forbid us from sanctioning [agency] conduct that is plainly

inconsistent with a statute's specific text.").

Congress knew how to ban only manufacture and not all sales after a certain date if it wanted to do so. In prior amendments to the CPSA, Congress required that "[e]ffective 6 months after the date of enactment of this Act [July 17, 2008], each portable gasoline container *manufactured on or after that date* for sale in the United States shall conform to the child-resistance requirements for closures on portable gasoline containers . . . ." Children's Gasoline Burn Prevention Act, Pub. L. No. 110-278, § 2(b), 122 Stat. 2602, 2602 (2008) (emphasis added); *see also* Consumer Product Safety Improvement Act of 1990, Pub. L. No. 101-608, §§ 203(b)(1), (b)(2)(a), 104 Stat. 3110, 3123 (1990). In the phthalate ban, Congress prohibited not just manufacture but also sales after the effective date. This explicit proscription must be given full effect. *See, e.g., Friends of Gateway v. Slater,* 257 F.3d 74, 81 (2d Cir. 2001) (stating that inclusion of restrictive language in one statute and exclusion in another demonstrates that "Congress knew how to implement such restrictions if it so desired").

In addition, the phthalate ban must be read to effectuate the purpose of the law. Congress passed the CPSA to protect the public against hazards posed by unsafe consumer products. 15 U.S.C. § 2051. Two principal purposes of the law are "(1) to protect the public against unreasonable risks of injury associated with consumer products; [and] (2) to assist consumers in evaluating the comparative safety of consumer products . . . ." *Id.* § 2051(b); *see also Pierce & Stevens Chem. Corp. v. U.S. Consumer Prod. Safety Comm'n*, 585 F.2d 1382, 1387 (2d Cir. 1978); *McKinnon v. Skil Corp.*, 638 F.2d 270, 275 (1st Cir. 1981). The CPSIA amended the CPSA to include the phthalate ban. Applying the phthalate ban to all items sold after the ban goes into effect, regardless of the date of manufacture, furthers the stated goals of the CPSA. The CPSC decision, in contrast, contravenes the statutory objectives by delaying protections for consumers and complicating consumer efforts to evaluate the safety of products on store shelves.

The phthalate ban should be interpreted to advance the stated goals of the law. *See, e.g., Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006) ("Interpretation of a word or phrase depends upon reading the whole statutory text, *considering the purpose* and context of the statute . . . .") (emphasis added); *Fed. Election Comm'n v. Political Contributions Data, Inc.*, 943 F.2d 190, 196 (2d Cir. 1991) (rejecting agency interpretation of a statute that undermined the purposes of the law); *U.S. v. The Anaconda Co.*, 445 F. Supp. 486, 494 (D.D.C. 1977) ("Remedial safety legislation such as the [Consumer Product Safety] Act should be broadly construed to effectuate its purpose.")

      B.    <u>The CPSC's Interpretation of the Statute Is Incorrect</u>.

The CPSC reads the phthalate ban to exempt all children's products manufactured before the effective date of the ban, even if sold or distributed in commerce after that date. To support this view, the CPSC relies on the statute's designation of the phthalate ban as a "consumer product safety standard." Bernard Dec. Exh. B at 1-2 (quoting 15 U.S.C. § 2057c(d)). An existing provision in the CPSA states that consumer product safety standards "shall be applicable only to consumer products manufactured after the effective date." 15 U.S.C. § 2058(g)(1). In light of this provision, the CPSC concludes that Congress did not express its clear intent to apply the phthalate ban "retroactively." Bernard Dec. Exh. B at 2.

The CPSC's interpretation is incorrect for three reasons. First, the provision relied on by the CPSC applies only to consumer product safety standards promulgated by the agency, not standards legislated by Congress. Second, there is a more logical explanation for Congress's use of the term consumer product safety standard: Congress wanted to adopt the preemption regime that applies to such standards. Third, the phthalate ban is a clear and prospective prohibition that does not implicate retroactivity concerns.

1.    <u>Restrictions on Consumer Product Safety Standards Promulgated by the CPSC Do Not Apply to Standards Legislated by Congress</u>.

The CPSC decision relies on a subsection in the CPSA indicating that consumer product safety standards "shall be applicable only to consumer products manufactured after the effective date." 15 U.S.C. § 2058(g)(1). But this provision applies only to standards *promulgated by the agency*, not standards legislated by Congress. *Id*. § 2056(a) ("The Commission may promulgate consumer product safety standards in accordance with the provisions of section 2058 of this title."). Section 2058 governs the agency's promulgation of "consumer product safety rules," which are defined to include both consumer product safety standards under the CPSA and hazardous substance bans under the FHSA. *Id*. § 2052(a)(6). Section 2058 contains a list of requirements with which the *agency* must comply when establishing a standard or ban by regulation. By its plain terms, nothing in this section could logically or properly apply to a standard or ban legislated by Congress. For example, section 2058 requires the CPSC to publish a notice of proposed rulemaking in the Federal Register prior to promulgating any consumer product safety standard. *Id*. § 2058(a)(1). The section also directs that the CPSC must accept a "voluntary standard" developed by the regulated industry, in lieu of an agency rule, if the voluntary standard meets certain criteria. *Id*. § 2058(b)(2). Finally, section 2058 provides that the CPSC "may by rule amend or revoke" any consumer product safety standard. *Id*. § 2058(h).

None of these provisions could apply to a consumer product safety standard mandated by Congress. The procedural requirements that govern agency promulgation of standards, like publication in the Federal Register, *cf. id*. § 2058(a)(1), do not apply to Congress. A voluntary standard regarding phthalates could not override the Congressional standard, as it could a proposed agency standard. *Cf. id*. § 2058(b)(2). And absent express Congressional authorization, the CPSC does not have the power to override Congress and revoke or amend the

phthalate ban through a rulemaking. *Cf. id*. § 2058(h). On its face, then, section 2058 – including subsection 2058(g)(1), relied on by the CPSC – applies only to standards promulgated by the agency through rulemaking, not to standards that are legislated by Congress.

Even if section 2058 could be read to apply to the phthalate ban, specific statutory language must supersede more general language where there is any potential conflict. *Dep't of Hous. & Urban Dev. v. Rucker*, 535 U.S. 125, 134 n.5 (2002) (a general statutory provision in one section "cannot trump the clear language of the more specific"). This is especially so when an earlier statute is broad and a subsequent enactment is more specific. *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 143 (2000). In the CPSIA, Congress made it unlawful for any person to "offer for sale" or "distribute in commerce" children's products containing phthalates after the effective date. 15 U.S.C. §§ 2057c(a), (b)(1). The CPSC decision purports to allow exactly that. The specific phthalate ban in the law must control; otherwise, Congress's express prohibition on sale and distribution in commerce would have no meaning. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2004) (citing "cardinal principle" that a statute should be construed, if possible, so that "no clause, sentence, or word shall be superfluous, void, or insignificant") (quotation omitted).[5]

    2.    <u>Congress Designated the Phthalate Ban a Consumer Product Safety Standard to Adopt the Preemption Regime that Applies to Such Standards</u>.

There is a logical explanation for Congress's use of the phrase "consumer product safety standard" that does not require the Court to ignore the operative language of the phthalate ban:

---

[5] The Supreme Court has also noted that Congress "does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions – it does not, one might say, hide elephants in mouseholes." *Whitman v. American Trucking Ass'ns*, 531 U.S. 457, 468 (2001); *see also U.S. v. Alpers,* 338 U.S. 680, 681-82 (1950) ("The language of the statute may not be distorted under the guise of construction, or so limited by construction as to defeat the manifest intent of Congress.").

Congress designated the phthalate ban a consumer product safety standard to adopt the existing

preemption regime that applies to such standards.

At the time it enacted the phthalate ban, Congress was aware that several states already

had phthalate bans in place. 154 Cong. Rec. S7874 (daily ed. July 31, 2008) (statement of Sen.

Boxer) (noting laws in California, Washington, and Vermont). Some of these bans apply more

broadly than the federal ban. *See*, *e.g.*, 2008 Wash. Legis. Serv. Ch. 288 §§ 2(3)(a), 3(1)(c)

(West) (banning phthalates in children's cosmetics, jewelry, car seats, and clothing, in addition

to toys and child care articles).

Designating the phthalate ban a consumer product safety standard preserves these broader

state laws. The CPSA only preempts conflicting state regulation of phthalates in the same

products regulated by a consumer product safety standard. 15 U.S.C. § 2075(a). Specifically,

the CPSA preempts "any requirements as to the performance, composition, contents, design,

finish, construction, packaging, or labeling *of such product* which are designed to deal with the

same risk of injury associated with such consumer product, unless such requirements are

identical to the requirements of the Federal standard." *Id*. (emphasis added). Congress's

characterization of the phthalate ban as a consumer product safety standard under the CPSA

preserves the rights of states to regulate phthalates in other products not addressed by the ban.[6]

---

[6] The CPSIA amends two different consumer protection laws, the CPSA and the FHSA. Congress might have chosen to regulate phthalates in consumer products through the FHSA. But the FHSA states that when a federal requirement addresses a hazardous substance under that law, "no State or political subdivision of a State may establish or continue in effect a requirement applicable *to such substance* and designed to protect against the same risk of illness or injury unless such requirement is identical" to the Federal requirement. 15 U.S.C. § 1261 note (b)(1)(B) (emphasis added). This could be read to preclude regulation of a "substance" (phthalates) even in products not regulated by the federal ban, like cosmetics or car seats. Congress's choice to regulate phthalates through a consumer product safety standard under the CPSA avoids that problem.

The heading for the relevant provision in the CPSIA, 15 U.S.C. § 2057c(d), supports this reading. The subsection is titled: "Treatment as consumer product safety standards; *effect on State laws*." (emphasis added). This heading identifies preemption as the focus of the section. *See Almendarez-Torres v. U.S.*, 523 U.S. 224, 234 (1998) ("[T]he title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute.") (quotation omitted); *Porter v. Nussle*, 534 U.S. 516, 527-28 (2002).

Congressional statements in the legislative history provide further support. During discussion of the conference report for the bill in the House, Congressman Waxman stated: "I am also pleased that under another key provision of the legislation – the new prohibition on phthalates – states retain the ability to regulate phthalates in product classes that are not regulated under this legislation." 154 Cong. Rec. H7580 (daily ed. July 30, 2008). Similarly, during the Senate proceedings considering the conference report for the bill, Senator Boxer remarked: "I am pleased that the language preserves the ability of States to regulate phthalates in product classes that are not regulated under this legislation, as well as States' ability to regulate alternatives to phthalates . . . ." 154 Cong. Rec. S7876 (daily ed. July 31, 2008).

This interpretation explains Congress's reference to consumer product safety standards in a manner consistent with the language and the purpose of the phthalate ban.

3.      Congress Imposed a Clear, Forward-Looking Ban on Phthalates in Children's Products that Does Not Implicate Retroactivity Concerns.

The CPSC decision concludes that applying the phthalate ban to existing inventory after the effective date would constitute improper "retroactive" application of the statute. Bernard Dec. Exh. B at 2. That is incorrect.

The Supreme Court has held that courts should not presume Congress to have applied a new standard retroactively absent a clear statement of unambiguous intent. *Landgraf v. USI Film*

*Prods.*, 511 U.S. 244, 265 (1994).  Here, however, the CPSIA was signed into law on August 14, 2008, and it imposes a ban on the manufacture, sale, distribution in commerce, and import of products containing phthalates beginning 180 days after enactment.  15 U.S.C. §§ 2057c(a), (b)(1).  This is a prospective standard and does not implicate retroactivity concerns.

Even if the phthalate ban is construed to have retroactive effect, the presumption against retroactivity does not apply if Congress's contrary intent is clear.  *Landgraf*, 511 U.S. at 280 (there is "no need to resort to judicial default rules" if "Congress has expressly prescribed the statute's proper reach").  In the CPSIA, Congress made it unlawful to "offer for sale" or "distribute in commerce" children's products containing phthalates beginning 180 days after enactment.  15 U.S.C. §§ 2057c(a), (b)(1).  This prohibition is clear and precludes application of the presumption against retroactivity.

The CPSC argues that manufacturers' "property rights" are "clearly implicated here because the property at issue, products in inventory in the distribution chain, was manufactured prior to any indication from Congress or the Commission that the level of phthalates in those products would be restricted."  Bernard Dec. Exh. B at 2.  By building in a delay of 180 days, however, Congress gave manufacturers and retailers time to reformulate their products and sell existing inventory, thereby protecting any rights that may have existed under prior law.

In support of its reading of the law, the CPSC contrasts the phthalate ban with a separate ban in the CPSIA on children's products containing lead, which are designated as "banned hazardous substances" under the FHSA.  Bernard Dec. Exh. B at 2; *see also* 15 U.S.C. § 1278a (lead ban).  The CPSC argues that Congress should have designated products with phthalates as "banned hazardous substances" if it wanted the ban to operate "retroactively."  But the FHSA is silent as to whether bans under that Act apply to products manufactured before the date of the

ban, and the CPSC acknowledges that, "[i]n the past, when the agency has determined that a product shall be treated as a banned hazardous substance, it has sometimes applied the ban retroactively to inventory and sometimes it has not." Bernard Dec. Exh. J at 3. Here, Congress provided the necessary statement of intent by prohibiting not just manufacture but sale and distribution of children's products with specified phthalates beginning on the ban date.

*　　*　　*

The Court should reject defendant's misreading of the law and enforce the statute's plain language and intent.

III.　　The Court Has Jurisdiction to Adjudicate Plaintiffs' Claims.

　　A.　　Plaintiffs Have Standing to Challenge the CPSC Decision.

To establish Article III standing, plaintiffs NRDC and Public Citizen must show that (1) their members would have standing to sue in their own right; (2) the interests they seek to protect are germane to their organizational purposes; and (3) the litigation will not require their members' individual participation. *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977); *Bldg. & Const. Trades Council v. Downtown Dev., Inc.*, 448 F.3d 138, 144 (2d Cir. 2006). Plaintiffs satisfy this three-part test.

Plaintiffs' members would have standing on their own because (a) they suffer concrete, particularized, and imminent "injury in fact" that is (b) fairly traceable to the CPSC decision and (c) likely to be redressed by a favorable judicial decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.* 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)); *Bldg. & Const. Trades Council*, 448 F.3d at 144.

　Plaintiffs' members include parents of young children. Their injury is both cognizable and clear. Phthalates have been documented to cause severe and permanent harm to human

17

health.  Janssen Dec. ¶¶ 11-21.  Infants and children are especially susceptible, and even small exposures may be significant.  *Id.* ¶¶ 14, 15, 24.  Parents have reasonable concern and anxiety about potential harm to their children from continued exposure to phthalates in children's products.  Declaration of Berit Block ¶ 5 ("I worry about the impacts that these chemicals may have on my children."); *see also* Declarations of Jasanna Britton ¶¶ 3-6; Sean Harrington ¶¶ 3-7; Karen Kraut ¶¶ 3-6; Anna Lonergan ¶¶ 3-5; Francesca Olivieri ¶¶ 3-6, 8; Julia Pershan ¶¶ 3-6; T. Kathryn Tucker ¶¶ 3-6; Daniel R. Vice ¶¶ 3-7; Janssen Dec. ¶ 26.  Increased phthalate exposure and uncertainty about that exposure are sufficient injuries for standing purposes.  *Laidlaw*, 528 U.S. at 184-85; *N.Y. Pub. Interest Research Group v. Whitman*, 321 F.3d 316, 325 (2d Cir. 2003); *Baur v. Veneman*, 352 F.3d 625, 628, 633-34 (2d Cir. 2003); *LaFleur v. Whitman*, 300 F.3d 256, 270-71 (2d Cir. 2002).

In addition, the CPSC decision impairs plaintiffs' members' ability to evaluate the safety of toys and child care products that may contain phthalates.  Block Dec. ¶¶ 6-7; Britton Dec. ¶¶ 5-6; Harrington Dec. ¶¶ 5-6; Kraut Dec. ¶ 7; Lonergan Dec. ¶ 4 ("Right now, I have no way of knowing whether toys contain phthalates or not."); Olivieri Dec. ¶¶ 5-6; Pershan Dec. ¶ 6; Tucker Dec. ¶¶ 5-6; Vice Dec. ¶¶ 6-7; Janssen Dec. ¶ 27 (citing lack of effective labeling to inform consumer whether or in what concentration a product contains phthalates).  By banning the sale of children's products that contain specified phthalates, the CPSIA provides consumers with certainty that such products purchased on or after February 10, 2009 will not place children at risk from exposure to these chemicals.  This assurance is central to the statutory scheme.  15 U.S.C. § 2051(b) (identifying statutory purpose "to assist consumers in evaluating the

comparative safety of consumer products"). Its absence injures plaintiffs' members.[7]

Plaintiffs' members' injuries are traceable directly to the CPSC decision. But for that decision, children would be spared dangerous exposures to phthalates in toys and other products beginning on February 10, 2009, and their parents would have confidence that the child care products they purchase are phthalate-free. A ruling in plaintiffs' favor will redress those injuries by effectuating the ban Congress imposed.

The suit is germane to each plaintiff's institutional mission. *See* Declaration of Linda Lopez ¶ 6 (reducing human exposure to toxic chemicals, including phthalates, is "central to NRDC's purpose"); Declaration of Joseph Stoshak ¶ 6 (protecting the public from exposure to phthalates "is consistent with one of Public Citizen's key purposes – to protect Americans from environmental and workplace toxins"). Finally, because plaintiffs seek only declaratory relief and the setting aside of the CPSC decision, participation of individual members is not required. *Bldg. & Const. Trades Council*, 448 F.3d at 150 (*Hunt* prong satisfied where organization "seeks a purely legal ruling without requesting . . . individualized relief" for its members).

Plaintiffs therefore have standing to sue.

B.   Plaintiffs Challenge Final Agency Action.

The APA provides for judicial review of "final agency action." 5 U.S.C. § 704. Agency action is final if it: (1) "mark[s] the consummation of the agency's decisionmaking process – it must not be of a merely tentative or interlocutory nature"; and (2) is "one by which rights or obligations have been determined or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (quotations and citations omitted); *see also Colaio v.*

---

[7] Some of plaintiffs' members also suffer economic injury. Olivieri Dec. ¶ 7 (wish to sell phthalate-free plastic articles in online baby products business); Britton Dec. ¶ 5. This economic harm is also sufficient to establish injury in fact. *Laidlaw*, 528 U.S. at 184-85.

*Feinberg*, 262 F. Supp. 2d 273, 285 (S.D.N.Y. 2003). The Court should take a "flexible" and "pragmatic" approach to finality, favoring the general presumption of judicial review. *Abbott Labs. v. Gardner*, 387 U.S. 136, 149-52 (1967); *U.S. Gypsum Co. v. Muszynski*, 161 F. Supp. 2d 289, 292 (S.D.N.Y. 2001) ("A court's determination of the finality of an agency's action is a flexible and pragmatic one.") (quotation omitted). The challenged CPSC decision is final action.

First, the CPSC decision "mark[s] the consummation of the agency's decisionmaking process." *Bennett*, 520 U.S. at 177-78. The decision was published in a letter by the CPSC General Counsel. Bernard Dec. Exh. B. It was confirmed both in a public announcement by the Chairman of the CPSC at an international consumer safety summit, *id.* Exh. C, and on the agency's website, *id.* Exh. D. The CPSC's clear and conclusive statement of how it will administer the CPSIA is neither tentative nor interlocutory. *See OSG Bulk Ships, Inc. v. United States*, 132 F.3d 808, 812 (D.C. Cir. 1998) ("[A]n agency's adoption of a general enforcement policy is subject to review."); *Barrick Goldstrike Mines Inc. v. Browner,* 215 F.3d 45, 48 (D.C. Cir. 2000) (agency guidance may constitute final action). Even assuming, incorrectly, that the November 17 decision alone does not constitute final action, the CPSC's multiple subsequent statements repeating and affirming that decision combine to constitute final action. *Barrick Goldstrike Mines*, 215 F.3d at 48-49 ("[F]inal agency action may result from a series of agency pronouncements rather than a single edict.") (quotation and citation omitted). Moreover, the CPSC's failure to revoke the decision, despite three express requests to do so, *see supra* at 6, confirms the finality of the agency's position. *Ciba-Geigy Corp. v. Envtl. Prot. Agency*, 801 F.2d 430, 437 (D.C. Cir. 1986).

Second, the CPSC decision triggers legal consequences. *Bennett,* 520 U.S. at 178. An agency must provide regulated parties with notice of applicable standards prior to enforcing

those standards against them. *See Rock of Ages Corp. v. Sec'y of Labor*, 170 F.3d 148, 156 (2d

Cir. 1999). By notifying the regulated community that it will permit the sale of banned products

after February 10, 2009, the CPSC decision would, absent a ruling in plaintiffs' favor here,

prevent agency enforcement of the statutory ban. By precluding its own enforcement, defendant

has "fixe[d] [its] legal relationship" with parties subject to regulation. *Rombough v. Fed.

Aviation Admin.*, 594 F.2d 893, 895 n.4 (2d Cir. 1979) (citing *Chicago & Southern Air Lines,

Inc. v. Waterman Steamship Corp.*, 333 U.S. 103, 112-13 (1948)).

The fact that the CPSC announced its decision by letter rather than through formal

rulemaking does not defeat finality. *See Her Majesty the Queen v. Envtl. Prot. Agency,* 912 F.2d

1525, 1531 (D.C. Cir. 1990) (agency may not avoid judicial review "merely by choosing the

form of a letter to express its definitive position on a general question of statutory

interpretation") (quotation omitted); *CropLife America v. Envtl. Prot. Agency*, 329 F.3d 876, 881

(D.C. Cir. 2003) (agency press release is binding regulation); *De La Mota v. U.S. Dept. of Educ.*,

Civ. No. 02-4276, 2003 WL 21919774 at *8 (S.D.N.Y. Aug 12, 2003) (email correspondence

between agency employee and plaintiffs is final agency action). Nor does the fact that the CPSC

decision was first announced by the agency's General Counsel as opposed to the Chairman of the

CPSC affect finality. *See Appalachian Power Co. v. Envtl. Prot. Agency*, 208 F.3d 1015, 1019-

23 (D.C. Cir. 2000) (agency "guidance" issued by two subordinate officials is final agency

action); *Her Majesty the Queen*, 912 F.2d at 1531-32 (letter from subordinate agency official

represented final action regarding the agency's interpretation of a statute).

The CPSC decision contains a boilerplate assertion that "[t]he views expressed in this

letter are those of the General Counsel and have not been reviewed or approved by the

Commission." Bernard Dec. Exh. B at 3. This boilerplate does not defeat finality. The CPSC's

subsequent public statements affirming the substance of the General Counsel's letter, *see* Bernard Dec. Exhs. C, D, make clear that the challenged decision is the final position of the CPSC. Courts routinely disregard boilerplate disclaimers when the challenged action is otherwise final. *See e.g., Appalachian Power*, 208 F.3d at 1022-23; *Her Majesty the Queen*, 912 F.2d at 1530 (letter from agency official is final despite disclaimer that "this letter represents only my thoughts on this issue, and does not necessarily reflect the position of the Administrator"); *U.S. Gypsum*, 161 F. Supp. 2d at 292 (agency memorandum of agreement is final despite boilerplate that it is "intended exclusively for the internal management of the Executive Branch, and does not establish or create any enforceable rights"). The November 17 letter also indicates that it "may be superseded at any time," Bernard Dec. Exh. B at 3, but that does not undermine finality, because "every regulation – indeed every law – can be changed at any time." *U.S. Gypsum*, 161 F. Supp. 2d at 292. And here, the CPSC has failed to respond to three separate requests to supersede the November 17 letter.

Accordingly, the Commission's decision is final and reviewable now.

IV.     Plaintiffs Require Prompt Resolution of Their Claim for Relief.

This Court's immediate intervention is required to effectuate the unequivocal will of Congress and protect children's health. The phthalate ban becomes effective on February 10, 2009. 15 U.S.C. §§ 2057c(a), (b)(1). Defendant's decision defies the explicit mandate of the CPSIA, endangering the children Congress means to protect.

Prompt resolution is essential to prevent harm to plaintiffs' members and the broader public. This harm will begin to accrue on February 10, 2009. If the CPSC decision remains in effect at that time, then it will be difficult to craft an effective remedy should plaintiffs prevail. Untold numbers of products will have to be removed from store shelves nationwide, tested, and

certified as phthalate-free.  The disruption to consumers, wholesalers, and retailers will be substantial.  The only proper and practical way to effectuate the express will of Congress is to impose the phthalate ban as of February 10, 2009, as the statute itself commands.

Plaintiffs have raised a purely legal question capable of prompt, definitive resolution: Does the CPSC decision contradict the CPSIA by allowing the sale of products Congress has banned?  There is no material fact in issue; the parties have competing views of the law.  Once briefing is complete, the case will be ripe for resolution.

There is a statutory as well as a logical reason to expedite a decision on plaintiffs' claim for relief.  Under 28 U.S.C. § 1657(a), "the court shall expedite the consideration of any action" on a showing of "good cause."  Good cause includes a strong public interest in enforcement of a statute.  *See* H. Rep. No. 98-985, at 6 (1984), *as reprinted in* 1984 U.S.C.C.A.N. 5779, 5784. Enforcing the plain terms of the CPSIA will vindicate the compelling public interest in children's health.  The Court should therefore expedite review and rule on this motion for summary judgment as soon as possible after briefing is complete.

## CONCLUSION

For the reasons set forth above, plaintiffs urge the Court to hold unlawful and set aside the CPSC decision.

Respectfully submitted,

*/s/  Mitchell S. Bernard*
Mitchell S. Bernard (MB 5823)
Aaron Colangelo
Avinash Kar
Natural Resources Defense Council
40 West 20th Street
New York, New York 10011
(212) 727-2700

Counsel for Plaintiffs

Of Counsel:

Brian Wolfman
Public Citizen Litigation Group
1600 20th Street, NW
Washington, DC 20007


Dated:  December 17, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that I caused to be served a true and correct copy of Plaintiffs' Memorandum in Support of Motion for Summary Judgment, with all accompanying declarations and exhibits, on the following counsel for defendant, by email and FedEx, on December 17, 2008.

James Cott, Chief, Civil Division
Beth Goldman, AUSA
U.S. Attorney's Office
Southern District of New York
86 Chambers Street
New York, NY 10007

Cheryl Falvey (FedEx only)
General Counsel
U.S. Consumer Product Safety Commission
4330 East West Highway
Bethesda, MD 20814

*/s/ Mitchell S. Bernard*
Mitchell S. Bernard