UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
NATURAL RESOURCES DEFENSE
COUNCIL, INC., and PUBLIC CITIZEN, INC.,  :

                                :

                Plaintiffs,

                                :  08 Civ. 10507 (PGG)

     v.

                                :

U.S. CONSUMER PRODUCT SAFETY
COMMISSION,                             :

                 Defendant.       :
------------------------------------x


# DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER
# SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT


MICHAEL F. HERTZ  
Acting Assistant Attorney General

EUGENE M. THIROLF  
Director

DRAKE CUTINI  
Attorney, Office of Consumer Litigation  
U.S. Department of Justice

LEV L. DASSIN  
Acting United States Attorney for the  
Southern District of New York

BETH E. GOLDMAN  
Assistant United States Attorney  
86 Chambers Street, 3rd Floor  
New York, New York 10007  
Telephone: (212) 637-2732

Defendant United States Consumer Product Safety Commission ("CPSC") respectfully submits this reply memorandum of law in further support of its cross-motion for summary judgment.

## Preliminary Statement

Plaintiffs continue to insist that the phthalates provision of the CPSIA[1] unambiguously operates as a ban on existing inventory despite all statutory indicators to the contrary:

- Congress did not call the phthalates provision a ban;

- Congress did not invoke the ban provisions of either the CPSA or the FHSA in connection with the phthalates provision;

- Congress, in the very same statute, demonstrated that it knew how to impose a ban when it deemed various lead-containing products "banned hazardous substances";

- Congress expressly identified the phthalates provision as a "consumer product safety standard" under the CPSA, without caveat;

- A consumer product safety standard applies only to products manufactured after the effective date and does not apply to existing inventory.

Congress, as plaintiffs claim, does not "hide elephants in mouseholes," Pl. Reply at 9, quoting Whitman v. American Trucking Ass'ns, 531 U.S. 457, 468 (2001). Thus, if Congress intended to impose a ban on phthalates such that it would have the expansive effect of banning products already manufactured and in inventory, one could expect Congress to do so unambiguously. But Congress did not give any direction to ban inventory; in fact, it chose

---

[1] Capitalized terms and abbreviations have the same meaning as in Defendant's opening memorandum of law, citations to which appear as "CPSC Br. at _." Citations to "Pl. Reply at _" refer to the Reply in Support of Plaintiffs' Motion for Summary Judgment and Opposition to Defendant's Cross Motion for Summary Judgment.

statutory language that suggests the contrary. Thus, the most plaintiffs can credibly argue is that the phthalates provision is ambiguous. In the absence of any clear directive from Congress, the CPSC properly concluded that Congress meant what it said when it deemed the phthalates provision a consumer product safety standard rather than a ban and that the phthalates provision applies to products manufactured after the effective date of the provision.

## ARGUMENT

A. The Phthalates Provision Does Not Unambiguously Constitute a Ban on Existing Inventory

1. Congress Called the Phthalates Provision a Consumer Product Safety Standard, Not a Ban

The fact that Congress chose not to call the phthalates provision a ban is significant and cannot be explained away by reference to a dictionary definition of a "ban" as "a prohibition." Pl. Reply at 5. First, a dictionary definition is not controlling in statutory interpretation. See City of New York v. Beretta U.S.A. Corp., 524 F.3d 384, 400, 403 (2d Cir. 2008) (rejecting dictionary definition and interpreting term in statute based on "context of the surrounding language and of the statute as a whole").

Second, and more significantly, the term "ban," unlike the term "prohibition," has statutory significance. It is a term of art that Congress chose not to use in describing the phthalates provision, unlike with respect to lead.[2] "[W]here Congress includes particular

---

[2] It is a term of art whether it is a "banned hazardous substance" under the FHSA or a "banned hazardous product" under the CPSA. The fact that the FHSA does not itself address whether an FHSA ban applies to inventory is not material. A banned hazardous substance or a banned hazardous product, unlike a consumer product safety standard, may be applied to existing inventory. By not calling the phthalates provision a ban, Congress signaled its clear intention that it should not be treated as a ban.

2

language in one section of a statute but omits it in another, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Troy Corp. v. Browner, 120 F.3d 277, 287 (D.C. Cir. 1997) (EPA's interpretation of statute upheld as reasonable where EPA properly relied on Congress's disparate choice of language in different sections of the statute) (quoting Keene Corp. v. U.S., 508 U.S. 200, 208 (1993)); S.E.C. v. McCarthy, 322 F.3d 650, 656-657 (9th Cir. 2003) (noting that "use of different words or terms within a statute demonstrates that Congress intended to convey a different meaning for those words" and finding material Congress's explicit decision to use term "application" rather than "action," where words are not interchangeable and have different statutory significance); Barmes v. U.S., 199 F.3d 386, 389 (7th Cir. 1999) ("different language in separate clauses in a statute indicates Congress intended distinct meanings"). Accordingly, in choosing not to identify the phthalate provision as a ban, but to identify it explicitly as a consumer product safety standard, Congress demonstrated its intention to treat phthalates as a standard, as defined and described in the CPSA.

Notwithstanding all of the markers indicating that the phthalates provision is a consumer product safety standard and not a ban, plaintiffs insist that the generic language of section 108(a) barring, inter alia, the manufacture, sale, and distribution of certain phthalate-containing items after the effective date of the provision means that Congress intended to impose a ban on the sale of existing inventory containing those phthalates. Pl. Reply at 2-5. The language of section 108(a), however, is not inconsistent with a standard and certainly does not transform a standard into a ban. On the contrary, it appears that Congress invoked the language of 15 U.S.C. §

3

2068(a) applicable both to standards and bans.[3] A consumer product safety standard, like a ban, bars sales after the effective date, but, in the case of a standard, only for products manufactured after the effective date. See 15 U.S.C. § 2058(g). Thus, the language of section 108(a) does not unambiguously provide that it applies to inventory.

Plaintiffs contend that the CPSC's reading of the statute renders the language of section 108(a) superfluous in violation of a "cardinal principle of statutory construction." Pl. Reply at 3. The language is not superfluous. Contrary to plaintiffs' contention, the CPSC's interpretation does not read any words out of the provision. The CPSC does not read out the words "any" or "offer for sale" or "distribute in commerce." Rather, all those words apply in the same way they do with respect to any consumer product safety standard – to products manufactured after the effective date.

Moreover, even if the inclusion of those words added little to our understanding of the statute, the Supreme Court has cautioned that even when "[t]here is no question that the statute would be read as we read it even if the phrase were missing," the rule against redundancy "does not necessarily have the strength to turn a tide of good cause to come out the other way." Gutierrez v. Ada, 528 U.S. 250, 258 (2000). Sometimes Congress includes technically unnecessary language out of "an abundance of caution." See Fort Stewart Schools v. FLRA, 495

---

[3] Interestingly, section 108(a) mirrors the language of section 2068(a), prior to its amendment by the CPSIA. Under the earlier version of 15 U.S.C. § 2068(a), it was unlawful to "manufacture for sale, offer for sale, distribute in commerce, or import any" consumer product that was not in conformity with a consumer product safety standard, 15 U.S.C. § 2068(a)(1), or had been declared a banned hazardous substance, 15 U.S.C. § 2068(a)(2). The new 2068(a)(1) combines standards and bans, reads slightly differently, and also makes it unlawful to "sell" such products. The phthalate provision, like the old section 2068(a), does not include the language making it unlawful to "sell."

U.S. 641, 646 (1990) (an unnecessary provision within a statute, "inserted out of an abundance of caution[, is] a drafting imprecision venerable enough to have left its mark on legal Latin (*ex abundanti cautela*)"; Ali v. Federal Bureau of Prisons, 128 S.Ct. 831, 840 (2008); U.S v. Bendtzen, 542 F.3d 722, 727 (9th Cir. 2008) (fact that interpretation creates redundancy does not alter court's conclusion).

    2.    Congress Did Not Provide Any Exceptions to Its Designation of the Phthalates Provision as a Consumer Product Safety Standard

Not only did Congress identify the phthalates provision as a consumer product safety standard, it did not provide any exceptions to that designation. Plaintiffs argue that Congress could have specified that the phthalates provision applied only to products manufactured after the effective date, as it did with respect to automatic garage door openers and children's gasoline burn prevention. Pl. Reply at 3. That argument turns a principle of statutory construction on its head. Congress identified the phthalates provision as a consumer product safety standard. It is only if Congress intended to create an exception to the usual rule applicable to standards that Congress would have to be explicit.[4] It is a "normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning." Gustafson v. Alloyd Co., 513 U.S. 561, 570 (1995) (internal quotes and citations omitted) ("prospectus" as used in one section of Securities Act of 1933 has same meaning in § 10 as in § 12); Schneider v.

---

[4] Thus, it is not significant that the provisions for automatic garage door openers and the children's gasoline burn prevention standards (15 U.S.C. § 2056 note) state that they apply to products manufactured after the effective date. These provisions are indisputably standards (see 15 U.S.C. § 2056 note (a) (invoking CPSA § 9, 15 U.S.C. § 2058)), which would necessarily apply only to products manufactured after the effective date. Congress's decision to reiterate that point, as set forth above, has little significance. Even plaintiffs could not argue that in the absence of such language, these provisions are bans that apply to existing inventory.

5

Feinberg, 345 F.3d 135, 146 (2d Cir. 2003) ("the canons of statutory construction favor consistent use of the terms throughout a statute."). Thus, in the absence of an explicit exception, a consumer product safety standard is a standard for all purposes.

Plaintiffs further contend, without authority, that notwithstanding the fact that Congress identified the phthalates provision as a consumer product safety standard, the provisions of 15 U.S.C. § 2058 are inapplicable. Pl. Reply at 6-8. They point to numerous subsections of section 2058, which they argue do not apply when Congress rather than the CPSC promulgates the standard. The fact that certain provisions necessarily do not apply when Congress bypasses the usual administrative rulemaking process does not mean that the effective date provision, 15 U.S.C. § 2058(g), also does not apply – at least not without explicit Congressional directive. Again, a standard as used in this provision means what it means in any other provision of the statute unless Congress explicitly says otherwise. See Gustafson, 531 U.S. at 570.[5]

Plaintiffs' insistence that Congress called the phthalates provision a consumer product safety standard only for the purpose of adopting the CPSA preemption regime is similarly unavailing. First, Congress never said that. Nothing in the text or the legislative history indicates that Congress decided not to call the provision a ban and instead to identify it as a consumer product safety standard for that reason. If Congress wanted to preclude any other

---

[5] Plaintiffs' claim that there is a conflict between the phthalates provision and the general requirements of the CPSC such that the later-enacted statute governs, Pl. Reply at 9, is plainly wrong. There is no conflict between the two provisions. In the later-enacted statute, Congress deliberately invoked the earlier statute and adopted its terms, thus signaling that the phthalates provision fits into the preexisting statutory scheme. See U.S. v. State of Arizona, 295 U.S. 174, 191 (1935) ("As a general rule, where the legislation dealing with a particular subject consists of a system of related general provisions indicative of a settled policy, new enactments of a fragmentary nature on that subject are to be taken as intended to fit into the existing system and to be carried into effect conformably to it, excepting as a different purpose is clearly shown.").

implication of its decision to treat the provision as a consumer product safety standard, it easily could have said so. It did not. As set forth above, absent express direction not to treat the phthalates provision as a standard for other purposes, we cannot conclude that Congress unambiguously intended it to be read in the narrow way plaintiffs suggest.

Second, if Congress's intent was for the phthalates provision to have limited preemptive effect, Congress could have done so without calling it a consumer product safety standard. Nothing prevented Congress from enacting a prohibition on phthalates independent of and without reference to any preexisting statute and crafting a preemption provision unique to phthalates, which is precisely what Congress did in connection with garage door openers. See 15 U.S.C. § 2056 Note(f).[6]

Third, while there is no dispute that the preemptive effect of the provision was an issue of importance to Congress and a subject of compromise, see CPSC Br. at 19, that debate only highlights the absence of any debate whatsoever in Congress about the effect the provision would have on existing inventory. Ultimately, Congress is silent on the subject of inventory – the "precise question at issue," Chevron, 467 U.S. at 842-43 – thus leaving a gap for the agency to fill. See CPSC Br. at 15-20.

B. The CPSC Opinion Regarding the Phthalates Provision Is Entitled to Deference

The November opinion filling the gap left by Congress is entitled to meaningful

---

[6] The statute provides: "In applying section 26(a) of the Consumer Product Safety Act (15 USC 2075) with respect to the consumer product safety rule of the Consumer Product Safety Commission under subsection (a), only those provisions of laws of States or political subdivisions which relate to the labeling of automatic residential garage door openers and those provisions which do not provide at least the equivalent degree of protection from the risk of injury associated with automatic residential garage door openers as the consumer product safety rule provides shall be subject to such section." 15 U.S.C. § 2056 Note(f).

deference. Even where the more limited Skidmore deference is applicable, it "must mean something more than that deference is due only when an inquiring court is itself persuaded that the agency got it right. Otherwise Skidmore deference would not be deference at all." Doe v. Leavitt, No. 08-1431, 2009 WL 81655, at *4 (1st Cir. Jan. 14, 2009).

Plaintiffs do not dispute that the General Counsel was designated by the expert agency to render opinions interpreting the statutes implemented by the CPSC. 16 C.F.R. § 1000.7. They simply disagree with her reasoning. The inquiry under Skidmore into the validity of the agency's reasoning "does not focus on the interpretation per se but, rather, on whether the agency has consulted appropriate sources, employed sensible heuristic tools, and adequately substantiated its ultimate conclusion." Doe, 2009 WL 81655, at *6. Here, there can be no doubt that the opinion relies on appropriate sources and tools and adequately substantiated its conclusion. The opinion looks closely at the new provision in the context of the statute as a whole and in relation to the statutes referred to in the new law, and applies traditional canons of statutory construction, all in "a logical and intellectually disciplined manner." Id. at *7. Consequently, the November opinion's interpretation of the phthalates provision, even if "not inevitable, is eminently sensible" and thus entitled to deference. Id.

Plaintiffs claim that the CPSC's interpretation of the phthalates provision is unpersuasive because it defeats the statutory purpose and that the only way to effectuate the statutory purpose is to apply the provision to existing inventory. Pl. Reply at 12-13, 19. That cannot possibly be correct. Plaintiffs correctly cite 15 U.S.C. § 2051(b) as the source of the statute's purposes.[7] Those purposes – to protect the public against unreasonable risks of injury, to assist consumers

---

[7] 15 U.S.C. § 2051(b) was not modified by the CPSIA.

in evaluating comparative safety of products, and to set uniform safety standards and minimize conflicting state and local regulations – underlie the authority to establish both bans and standards, as well as to conduct testing and inspections, require certifications, among other things. Thus, it is clear that Congress recognized that sometimes the statutory purpose is effectuated through bans and sometimes through standards. It certainly cannot be the case that the statute's remedial purpose can only be achieved through a ban on inventory, given that Congress itself designed the system to include forward-looking standards. See Reves v. Ernst & Young, 507 U.S. 170, 183-84 (1993) (even where remedial statute contains liberal construction clause it is "not an invitation to apply [statute] to purposes that Congress never intended.").

Plaintiffs' citation to legislative history only highlights the reasonableness of the November opinion. General statements by legislators articulating the goal of making products safe for consumers, see Pl. Reply at 12 n.2, shed little light on the question at issue. No legislator said anything to indicate that Congress wanted the new phthalates provision to ban products already in inventory. Moreover, plaintiffs misunderstand the import of the fact that the statute was a product of compromise. Pl. Reply at 13. There were legislators who initially did not favor inclusion of any provision governing phthalates but who later agreed to a compromise bill. See, e.g., 154 Cong. Rec. H7584 (daily ed. July 30, 2008) (statement of Rep. Barton). One cannot know how and why the compromise was reached and whether the fact that the phthalates provision was identified as a standard played any role in making a compromise possible. The Supreme Court recognized that because statutes are often the result of compromise, they "are seldom crafted to pursue a single goal." Landgraf v. USI Film Prods., 511 U.S. 244, 285-86 (1994). Accordingly, the Court warned against placing too much emphasis on the supposed

9

purpose of the statute to justify giving a statute a more drastic effect. Id.

Congress made its choices clear in the CPSIA: (1) the lead provisions were to be treated as a banned hazardous substance, and (2) the phthalates provision was to be treated as a consumer product safety standard. The General Counsel's decision simply reflects the legal consequences of those Congressional choices and thus is entitled to deference.

## CONCLUSION

For the foregoing reasons, defendant's cross-motion for summary judgment dismissing the complaint should be granted.

Dated: New York, New York
January 23, 2009

| | |
|---|---|
| MICHAEL F. HERTZ<br>Acting Assistant Attorney General<br><br>EUGENE M. THIROLF<br>Director<br><br>DRAKE CUTINI<br>Attorney, Office of Consumer Litigation<br>U.S. Department of Justice | LEV L. DASSIN<br>Acting United States Attorney for the<br>Southern District of New York<br><br>By: *(signature)* BETH E. GOLDMAN<br>Assistant United States Attorney<br>86 Chambers Street, 3rd Floor<br>New York, New York 10007<br>Telephone: (212) 637-2732<br>Fax: (212) 637-2730<br>beth.goldman@usdoj.gov |