# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

—————————————————————
NATURAL RESOURCES DEFENSE )
COUNCIL, INC., and PUBLIC CITIZEN, )
INC., )
          )
       Plaintiffs, )
      v. )       08 Civ. 10507 (PGG)
          )
U.S. CONSUMER PRODUCT )
SAFETY COMMISSION, )
          )
       Defendant. )
—————————————————————)

## REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT

Mitchell S. Bernard (MB 5823)
Aaron Colangelo
Avinash Kar
Natural Resources Defense Council
40 West 20th Street
New York, New York 10011
(212) 727-2700
(212) 727-1773 (fax)

Counsel for Plaintiffs

Of Counsel:

Brian Wolfman
Public Citizen Litigation Group
1600 20th Street, NW
Washington, DC 20007

Dated: January 16, 2009

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ii

INTRODUCTION ......................................................................................1

ARGUMENT ............................................................................................2

I.     The Challenged CPSC Decision Is Contrary to the Plain Language of the Law ..........2

     A.     Congress Prohibited the Sale and Distribution of Any Children's Products Containing Phthalates after February 10, 2009.....................................2

     B.     Restrictions in Section 2058 Apply Only to Consumer Product Safety Standards Promulgated by the CPSC, Not Standards Legislated by Congress ................................................................................6

     C.     Congress Designated the Phthalate Ban a Consumer Product Safety Standard to Adopt the Preemption Regime that Applies to Such Standards ...10

     D.     The CPSC Decision Defeats the Statutory Purpose .............................12

     E.     The Presumption Against Retroactivity Does Not Apply........................14

II.     The Court Should Not Defer to the CPSC Decision......................................15

     A.     The Statutory Language Is Unambiguous........................................15

     B.     The Court Should Reject the CPSC's Interpretation As Unpersuasive ...........16

CONCLUSION.........................................................................................19

## TABLE OF AUTHORITIES

### CASES

Boykin v. KeyCorp, 521 F.3d 202 (2d Cir. 2008) …………………………………………...18

Brown v. Gardner, 513 U.S. 115 (1994)………………………………………………………8

Cartoon Network LP v. CSC Holdings, Inc., 536 F.3d 121 (2d Cir. 2008)…………………18

Catskill Devel., L.L.C. v. Park Place Enter. Corp., 547 F.3d 115 (2d Cir. 2008) ……….17, 18

Chevron U.S.A., Inc. v. Natural Res. Def. Council, 467 U.S. 837 (1984) …………………..16

Christensen v. Harris Cty., 529 U.S. 576 (2000) ……………………………………...17, 19

Cohen v. J.P. Morgan Chase & Co., 498 F.3d 111 (2d Cir. 2007) …………………………16

Dolan v. U.S. Postal Serv., 546 U.S. 481 (2006)……………………………………………12

Duncan v. Walker, 533 U.S. 167 (2001)………………………………………………………3

Fed. Election Comm'n v. Political Contributions Data, Inc., 943 F.2d 190 (2d Cir. 1991)…13

Food & Drug Admin. v. Brown & Williamson Tobacco Corp., 529 U.S. 120 (2000) ……….9

General Dynamics Land Sys., Inc., v. Cline, 540 U.S. 581 (2004) …………………13, 15, 16

INS v. Cardoza-Fonseca, 480 U.S. 421 (1987)………………………………………………16

Jones v. U.S., 527 U.S. 373 (1999)……………………………………………………………8

Landgraf v. USI Film Prods., 511 U.S. 244 (1994) ………………………………….14, 15

Mizrahi v. Gonzales, 492 F.3d 156 (2d Cir. 2007)…………………………………………..16

Rotimi v. Gonzales, 473 F.3d 55 (2d Cir. 2007) ……………………………………………17

Schiavone v. Pearce, 79 F.3d 248 (2d Cir. 1996) …………………………………………13

Skidmore v. Swift, 323 U.S. 134 (1944)……………………………………………….17, 18

Tcherepnin v. Knight, 389 U.S. 332 (1967) …………………………………………………13

U.S. v. Mead Corp., 533 U.S. 218 (2001)……………………………………………………17

<u>U.S. v. Menasche</u>, 348 U.S. 528 (1955) …………………………………………………………3

<u>U.S. v. Morton</u>, 467 U.S. 822 (1984)……………………………………………………...16

<u>Whitman v. American Trucking Ass'ns</u>, 531 U.S. 457 (2001) ………………………………9

## STATUTES

15 U.S.C. § 1261 note…………………………………………………………………………..10

15 U.S.C. § 2051(b) ………………………………………………………………………...12, 14

15 U.S.C. § 2051 note ………………………………………………………………………….17

15 U.S.C. § 2056(a) …………………………………………………………………………...6

15 U.S.C. § 2056 note …………………………………………………………………….3, 4, 8

15 U.S.C. § 2056a(c)(1) ……………………………………………………………………….4

15 U.S.C. § 2057c ………………………………………………………………….2, 4, 11, 15

15 U.S.C § 2057c(a) …………………………………………………………………..2, 4, 15

15 U.S.C § 2057c(b)(1) …………………………………………………………………..2, 4, 15

15 U.S.C § 2057c(d) ……………………………………………………………….6, 11, 15

15 U.S.C § 2058 …………………………………………………………………….6, 8, 9, 15

15 U.S.C § 2058(a) …………………………………………………………………………6, 7

15 U.S.C § 2058(b) …………………………………………………………………………6, 7

15 U.S.C § 2058(c) …………………………………………………………………………6, 7

15 U.S.C § 2058(d) ………………………………………………………………………….7

15 U.S.C § 2058(e)…………………………………………………………………………….7

15 U.S.C § 2058(f)…………………………………………………………………………….7

15 U.S.C. § 2058(g) ………………………………………………………………………….7, 8

15 U.S.C. § 2058(g)(1) …………………………………………………………………….6, 8

15 U.S.C § 2058(h) ............................................................................7, 8

15 U.S.C § 2058(i) ...............................................................................7

15 U.S.C. § 2068(a) ..........................................................................4

15 U.S.C. § 2075(a) ............................................................................10

15 U.S.C. § 6004(c)...............................................................................8

## LEGISLATIVE HISTORY

154 Cong. Rec. H7579 (daily ed. July 30, 2008) (statement of Rep. Rush) ..........................5

154 Cong. Rec. H7580 (daily ed. July 30, 2008) (statement of Rep. Waxman) ................11

154 Cong. Rec. H7582 (daily ed. July 30, 2008) (statement of Rep. Barton)................5, 14

154 Cong. Rec. H7585 (daily ed. July 30, 2008) (statement of Rep. Markey) ..................5

154 Cong. Rec. S7868 (daily ed. July 31, 2008) (statement of Sen. Stevens)...................12

154 Cong. Rec. S7869 (daily ed. July 31, 2008) (statement of Sen. Collins) ...................12

154 Cong. Rec. S7870 (daily ed. July 31, 2008) (statement of Sen. Levin)....................12

154 Cong. Rec. S7870 (daily ed. July 31, 2008) (statement of Sen. Sununu)...................14

154 Cong. Rec. S7874 (daily ed. July 31, 2008) (statement of Sen. Feinstein) .................5

H.R. Rep. No. 92-1153 (1972) ..........................................................................9

## OTHER AUTHORITIES

2008 Wash. Legis. Serv. Ch. 288 ..........................................................................11

American Heritage Dictionary, 4th Ed. (2000) .............................................................5

## INTRODUCTION

In the Consumer Product Safety Improvement Act ("CPSIA" or "Act"), Congress prohibited the manufacture, sale, distribution in commerce, and import of children's products containing certain phthalates after February 10, 2009. The Consumer Product Safety Commission ("CPSC") concluded, in the decision challenged here, that children's products containing phthalates otherwise prohibited by the Act could be sold and distributed in commerce after February 10 if they were manufactured before that date. This decision disregards the plain language of the law and would authorize what Congress banned – the sale and distribution of any children's product containing the specified phthalates after a date certain. Congress could have limited the phthalate prohibition only to items manufactured after the statute's effective date, as it has for prohibitions on other consumer products, but did not. The Court should apply the law as Congress wrote it.

The CPSC does not dispute that the phthalate provision was intended to advance express consumer protection goals contained in the law. But the CPSC decision frustrates those goals by perpetuating children's exposure to potentially harmful products and undermining the consumer confidence that the statute meant to create. The CPSC decision would permit children's products containing prohibited levels of phthalates to be distributed and sold indefinitely, if manufactured before February 10. Consumers would have no way of knowing, years into the future, whether children's products on store shelves contain prohibited phthalates or not.

To defend its decision, the CPSC relies on the statute's characterization of the phthalate ban as a "consumer product safety standard" under the Consumer Product Safety Act ("CPSA"). The CPSC claims that such standards never apply to products manufactured before a standard's effective date. But the CPSC argument hinges on a procedural requirement in the CPSA that

governs only standards promulgated by the agency, not standards, like the phthalate prohibition, enacted directly by Congress. It makes no sense to apply that procedural requirement here, especially where Congress made its intent clear by prohibiting all sales and distribution in commerce after a designated date. Moreover, there is a more logical reason for Congress's use of the term "consumer product safety standard" in the phthalate ban: Congress intended to adopt the relatively narrow preemption regime that applies to such standards and therefore preserve existing state legislation, that Congress knew about at the time, limiting phthalates in consumer products not addressed by the federal ban.

The Court can and should resolve this matter based on the statute's plain language. Even if the phthalate prohibition is ambiguous, that ambiguity is readily resolved in plaintiffs' favor by resort to the context, legislative history, and purposes of the Act. Assuming that Congressional intent is still unclear, the Court should only defer to the CPSC's interpretation to the extent that the interpretation is persuasive. No greater level of deference is warranted. Here, the CPSC decision is unpersuasive and should be rejected.

## ARGUMENT

I.     The Challenged CPSC Decision Is Contrary to the Plain Language of the Law.

    A.     Congress Prohibited the Sale and Distribution of Any Children's Products Containing Phthalates after February 10, 2009.

The CPSIA makes it unlawful to "manufacture for sale, *offer for sale, distribute in commerce*, or import into the United States *any*" children's product containing certain phthalates above a set limit. 15 U.S.C. §§ 2057c(a), (b)(1) (emphasis added). This prohibition goes into effect "[b]eginning on the date that is 180 days after August 14, 2008," or February 10, 2009. *Id*. Congress titled this section "Prohibition on *sale* of certain products containing specified phthalates." *Id*. § 2057c (emphasis added).

The challenged CPSC decision would permit sale and distribution of such products indefinitely, as long as they were manufactured before the effective date of the ban. Declaration of Mitchell S. Bernard Exh. B at 1-2 (Dec. 17, 2008) ("Bernard Dec."). This effectively deletes the express language in the phthalate prohibition that makes it unlawful to "offer for sale" or "distribute in commerce" children's products containing phthalates. The CPSC decision also reads the word "any" out of the phthalate prohibition. The CPSC would not prohibit the sale or distribution of "any" identified children's products after the effective date; it would in fact permit the sale of all such children's products manufactured before February 10. The CPSC's reading thus violates the "cardinal principle of statutory construction" that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (internal quotation marks and citations omitted); *see also U.S. v. Menasche*, 348 U.S. 528, 538-39 (1955) ("It is our duty 'to give effect, if possible, to every clause and word of a statute.'") (citation omitted).

Congress could easily have said what the CPSC claims it meant – that it is unlawful only to manufacture products containing phthalates after a date certain. Congress did so in other provisions in the law. With respect to portable gasoline containers, for example, Congress directed: "Effective 6 months after the date of enactment of this Act, each portable gasoline container *manufactured on or after that date* for sale in the United States shall conform to the child-resistance requirements for closures on portable gasoline containers" of a particular standard. 15 U.S.C. § 2056 note (Children's Gasoline Burn Prevention Sec. 2(b)) (emphasis added). Similarly, Congress required manufacturers to cease making automatic garage door openers that failed to meet specified requirements by a certain date, but did not place any

restrictions on sales: "Effective on and after January 1, 1991, each automatic residential garage door opener *manufactured on or after that date* for sale in the United States shall conform to the entrapment protection requirements of" a specified standard. *Id*. § 2056 note (Automatic Garage Door Openers Sec. (b)(1)) (emphasis added). Congress could have used the same language here, but did not. Nevertheless, the CPSC reads the phthalate ban as though it forbids manufacture only.

In its memorandum of law defending its decision ("CPSC Br."), the CPSC contrasts the phthalate prohibition with a different section of the law that makes it unlawful to "otherwise place in the stream of commerce" non-compliant nursery products, 15 U.S.C. § 2056a(c)(1), and claims that the phthalate prohibition contains "[n]o similar reference to the stream of commerce." CPSC Br. at 19. The CPSC is wrong. The phthalate prohibition expressly makes it unlawful to "distribute in commerce" children's products containing certain phthalates, 15 U.S.C. §§ 2057c(a), (b)(1), articulating a clear intent to forbid more than manufacture alone.

The CPSC attempts to discount the statute's express ban on sale and distribution by arguing that the language of the phthalate ban "simply mirrors" language elsewhere in the statute, 15 U.S.C. § 2068(a), and therefore does not demonstrate "unambiguous intent to apply the prohibition to the sale of inventory." CPSC Br. at 18. But the fact that the same language appears elsewhere in the law does not dilute its meaning in the specific section imposing the phthalate ban, 15 U.S.C. § 2057c. As the CPSC admits in its brief, Congress crafted a variety of different restrictions for the different consumer products regulated by the CPSIA, some of which prohibit sale and distribution, and some of which do not. *See* CPSC Br. at 8-11. The fact that Congress chose to ban sale and distribution of products containing phthalates after the effective

date – when it did not do so for all products regulated by the law – must be considered purposeful and not accidental.

In an effort to avoid the statute's plain language, the CPSC claims that the phthalate provision is a "prohibition," not a "ban." CPSC Br. at 16-17. But a prohibition is the same as a ban. American Heritage Dictionary, 4th Ed., at 139 (2000) (ban, as noun: "A prohibition imposed by law or official decree"). The CPSC itself refers to the phthalate prohibition as a ban, both on its website, *see* Bernard Dec. Exh. D at 2, and in its brief to this Court. CPSC Br. at 18 n.2 & 24. So did Members of Congress, in describing the final law. *See, e.g.,* 154 Cong. Rec. H7585 (daily ed. July 30, 2008) ("We have agreed to BAN lead and phthalates in children's products.") (statement of Rep. Markey, capitalization in original).[1]

In using the word ban, plaintiffs do not argue that phthalates are "banned hazardous substances" under the Federal Hazardous Substances Act ("FHSA"), as the CPSC implies. CPSC Br. at 16-17. Rather, plaintiffs argue that the challenged CPSC decision improperly ignores the statute's express prohibition (or ban) on the sale and distribution of children's products containing phthalates beginning on February 10. Indeed, nowhere in the challenged decision or in the CPSC's brief does the agency explain how its interpretation of the law preserves any meaning for the statute's prohibition on sale and distribution. The Court should reject the CPSC's interpretation and give effect to the plain language of the law.

---

[1] *See also, e.g.*, 154 Cong. Rec. S7874 (daily ed. July 31, 2008) ("Most importantly, this legislation bans the use of six phthalates in many children's products and child care articles.") (statement of Sen. Feinstein); 154 Cong. Rec. H7579 (daily ed. July 30, 2008) (the statute "effectively bans lead and certain phthalates in children's products") (statement of Rep. Rush); *id*. at H7582 ("The result is the bill before us where three specific phthalates are banned outright, and another three are temporarily prohibited while we do a comprehensive scientific study.") (statement of Rep. Barton).

B.   Restrictions in Section 2058 Apply Only to Consumer Product Safety Standards Promulgated by the CPSC, Not Standards Legislated by Congress.

Both the CPSC decision and the government's litigation defense rely entirely on the statute's characterization of the phthalate prohibition as a "consumer product safety standard," at 15 U.S.C. § 2057c(d), and the statement in a separate subsection of the CPSA that consumer product safety standards "shall be applicable only to consumer products manufactured after the effective date." *Id*. § 2058(g)(1).  As plaintiffs explained in their opening brief, however, this latter subsection applies only to standards promulgated by the agency, not standards legislated by Congress.  Plaintiffs' Br. at 12-13.

Section 2058 establishes procedural requirements for consumer product safety standards promulgated by the CPSC.  15 U.S.C. § 2056(a) ("The Commission may promulgate consumer product safety standards in accordance with the provisions of section 2058 of this title.").  The section is titled "Procedure for consumer product safety rules."  *Id*. § 2058.  Consistent with its title, the entirety of section 2058 contains procedural requirements that apply to consumer product safety rules promulgated by the CPSC.  There are nine subsections in section 2058, and every subsection expressly addresses the procedural responsibilities of the *Commission* when promulgating a rule:

1.   Subsection 2058(a) requires the CPSC to publish a notice of proposed rulemaking and solicit public comment before promulgating a consumer product safety standard.

2.   Subsection 2058(b) requires the CPSC to terminate its promulgation of a consumer product safety standard and defer to a "voluntary standard" developed by the regulated industry if that voluntary standard meets certain criteria.

3.   Subsection 2058(c) directs the CPSC to publish any consumer product safety standard as a proposed rule, along with a cost-benefit analysis, prior to final promulgation.

4.      Subsection 2058(d) requires the CPSC either to finalize or withdraw proposed standards within a certain amount of time after their publication and directs the CPSC to accept oral as well as written public comments on proposed standards.

5.      Subsection 2058(e) compels the CPSC to consider certain information when promulgating a standard.

6.      Subsection 2058(f) requires the CPSC to publish certain findings regarding the need for a standard and its costs and benefits before it may promulgate a final standard.

7.      Subsection 2058(g) directs that the CPSC shall set the effective date of a standard between 30 and 180 days after promulgation, unless the CPSC finds that an earlier or later date is in the public interest.  At the crux of the statutory dispute here, 2058(g)(1) states:  "In no case may the effective date be set at a date which is earlier than the date of promulgation.  A consumer product safety standard shall be applicable only to consumer products manufactured after the effective date."

8.      Subsection 2058(h) states that the CPSC "may by rule amend or revoke" any consumer product safety standard.

9.      Subsection 2058(i) requires the CPSC to respond to a petition for rulemaking within a reasonable time.

On its face, this entire section concerns the procedures that the CPSC must follow in promulgating a rule.  Nothing in this section could apply to a standard legislated by Congress.  Congress is not required to solicit notice and comment before establishing a consumer product safety standard, *cf*. *id*. §§ 2058(a), (d); need not defer to a voluntary standard set forth by the regulated industry, *cf*. *id*. § 2058(b); and need not conduct a regulatory analysis regarding costs and benefits prior to establishing a standard, *cf*. *id*. §§ 2058(c), (e), (f).  Further, the CPSC cannot

change the effective date of a Congressional standard, *cf. id.* § 2058(g)(1), or amend or revoke such a standard absent Congress's permission, *cf. id.* § 2058(h).

The CPSC relies exclusively on one sentence in one subsection of section 2058 to support its argument. But statutory language must be read in context. *Jones v. U.S.*, 527 U.S. 373, 389 (1999) ("[A] phrase gathers meaning from the words around it.") (quotation omitted); *Brown v. Gardner*, 513 U.S. 115, 118 (1994) ("[A] word is known by the company it keeps.") (quotation omitted). The entirety of section 2058 addresses only procedures for the promulgation of agency rules. The CPSC ignores this context when it selectively cites one sentence in the section to override Congress's express prohibition on sale and distribution of children's products containing phthalates.

In its brief, the CPSC makes no mention of the plain text, context, title, or purpose of section 2058. Instead, the CPSC argues only that Congress should have expressly "overridden" the terms of section 2058(g) if it did not want that section to apply. CPSC Br. at 18 n.2. Congress has waived the application of section 2058 in the past, but only for standards it directed the agency to promulgate, not for standards legislated by Congress. 15 U.S.C. §§ 2056 note Sec. 2(e) (gasoline containers); 2056 note Sec. (g) (garage door openers); 6004(c) (bicycle helmets). In those instances, Congress prescribed alternate procedural requirements for the agency to follow in its rulemaking. *Id.* (requiring compliance with the Administrative Procedure Act at section 553 of Title 5 in each instance). There was no need or reason for Congress to override section 2058 here because that section, on its face, could not apply to a standard legislated by Congress itself.

The 1972 legislative history for section 2058, cited by the CPSC, supports plaintiffs' argument. First, the discussion of section 2058 appears under the heading "*Administrative*

*Procedures* Applicable to Promulgation of Consumer Product Safety Rules." H.R. Rep. No. 92-1153, at 36 (1972) (emphasis added). This heading underscores plaintiffs' principal point regarding section 2058 – that it governs administrative, not legislative, actions. Second, the relevant language expressly refers only to standards promulgated by the CPSC: "Consumer product safety standards may be made applicable only to consumer products which are manufactured after the date a standard is promulgated. Thus *the Commission* could not establish a retroactive effective date for any consumer product safety rule which embodies a product safety standard." *Id*. at 37 (emphasis added).

The CPSC's interpretation disregards the Supreme Court's observation that Congress does not "hide elephants in mouseholes." *Whitman v. American Trucking Ass'ns*, 531 U.S. 457, 468 (2001). The CPSC alleges that Congress did exactly that, when it argues that Congress vacated a prohibition on sales and distribution through a sentence in a separate section governing procedures for agency rulemaking. Also, to the extent that there is any perceived conflict between the phthalate prohibition and the general procedural requirements for agency rules contained in section 2058, the Supreme Court has held that more specific statutory language prevails over more general statutory language, especially when, as here, the more specific language was enacted later. *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 143 (2000); Plaintiffs' Br. at 13. The CPSC offers no response to this argument in its brief.

Finally, the CPSC's comparison to the separate ban on lead in children's products is misplaced. CPSC Br. at 19. The CPSC argues that Congress specified that the lead prohibition contained in the CPSIA was "a ban and subject to treatment under the FHSA, thus eliminating any question as to whether the ban applied to inventory." *Id*. According to the CPSC, Congress

should have done the same for phthalates if it wanted that prohibition to apply to items manufactured before the effective date of the law.  *Id.*  But designating consumer product restrictions a ban under the FHSA does not address whether those restrictions apply to inventory, because the FHSA is silent on that question.  Plaintiffs' Br. at 16-17.  It is Congress's decision to prohibit sale and distribution of any regulated product after February 10 that resolves the issue.

    C.    <u>Congress Designated the Phthalate Ban a Consumer Product Safety Standard to Adopt the Preemption Regime that Applies to Such Standards</u>.

As explained in plaintiffs' opening brief, there is a more logical reason for Congress's use of the term "consumer product safety standard" in the phthalate provision.  Plaintiffs' Br. at 13-15.  By calling the phthalate prohibition a standard and not a hazardous substance ban, Congress adopted the preemption regime that applies to such standards and avoided the more restrictive preemption regime that applies to hazardous substance bans.

With respect to a consumer product safety standard, the CPSA preempts "any requirements as to the performance, composition, contents, design, finish, construction, packaging, or labeling *of such product* which are designed to deal with the same risk of injury associated with such consumer product, unless such requirements are identical to the requirements of the Federal standard."  15 U.S.C. § 2075(a) (emphasis added).  In contrast, the FHSA states that when a federal requirement addresses a hazardous substance under that law, "no State or political subdivision of a State may establish or continue in effect a requirement applicable *to such substance* and designed to protect against the same risk of illness or injury unless such requirement is identical" to the Federal requirement.  *Id.* § 1261 note (b)(1)(B) (emphasis added).

There is therefore a critical difference between the preemptive effect of a standard under the CPSA and a hazardous substance ban under the FHSA.  A standard under the CPSA

preempts state regulation of the same products. In this case, that would mean children's toys and child care articles. A hazardous substance ban under the FHSA preempts state regulation of the same substance. In this case, that could mean phthalates in *any* consumer product.

Congress adopted the narrower scope of preemption under the CPSA for the phthalate prohibition in 15 U.S.C. § 2057c. The section characterizing the phthalate prohibition as a consumer product safety standard is titled "Treatment as consumer product safety standards; *effect on State laws.*" *Id.* § 2057c(d) (emphasis added). This identifies preemption as the focus of the section. At the time Congress enacted the phthalate provision, it was aware that several states already had phthalate restrictions in place. Plaintiffs' Br. at 14. Some of these state laws apply more broadly than the federal prohibition. *See* 2008 Wash. Legis. Serv. Ch. 288 §§ 2(3)(a), 3(1)(c) (banning phthalates in children's cosmetics, jewelry, car seats, and clothing, in addition to toys and child care articles). Congress wanted to preserve these broader state efforts. *See, e.g.*, 154 Cong. Rec. H7580 (daily ed. July 30, 2008) ("[S]tates retain the ability to regulate phthalates in product classes that are not regulated under this legislation.") (statement of Rep. Waxman); Plaintiffs' Br. at 15. Characterizing the phthalate prohibition as a hazardous substance ban under the FHSA might have preempted state regulation of phthalates in other consumer products not addressed by the federal law. By designating the phthalate prohibition a consumer product safety standard under the CPSA, Congress ensured that preemption is limited only to state regulation of phthalates in the same products (children's toys and child care articles), not state regulation of phthalates in other consumer products (like jewelry, cosmetics, car seats, and clothing).

The CPSC asserts that "[h]ad Congress been interested only in preemption, the FHSA also contains a preemption provision." CPSC Br. at 18. But this ignores the difference between

the two statutes; Congress opted for preemption under the CPSA *instead of* preemption under the

FHSA because of its narrower scope.  The CPSC also confuses the issue by stating that "if

Congress's goal was to adopt preemption and avoid prospective application, it could have

invoked the FHSA, as it did with the lead ban."  CPSC Br. at 18.  This gets plaintiffs' argument

backwards.  Congress wanted to *avoid* preemption of existing state laws that restricted phthalates

in a wider range of consumer products than addressed by federal law.  Designating the phthalate

ban a consumer product safety standard achieved this goal.

      D.      <u>The CPSC Decision Defeats the Statutory Purpose</u>.

      The Court should look to the statute's purpose to help determine its plain meaning.

*Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006).  The purposes of the phthalate prohibition

are to protect consumers from potentially harmful exposure and increase consumer confidence in

the safety of products on store shelves.  15 U.S.C. § 2051(b); Plaintiffs' Br. at 10.[2]  The CPSC

decision defeats these uncontested purposes of the law.  The decision permits the sale and

distribution of children's products containing phthalates long after a prohibition on such sales

and distribution goes into effect.  In fact, there would never be a prohibition on sale; as long as

there are stockpiled products manufactured before February 10, they could be sold indefinitely.

And because there is no labeling requirement for phthalates, *see* Plaintiffs' Br. at 18, it would be

impossible for consumers to evaluate the comparative safety of children's products on store

shelves, even years into the future.  Congress intended the opposite result.

---

[2] *See also, e.g.*, 154 Cong. Rec. S7868 (daily ed. July 31, 2008) ("Passage of this bill will help
assure consumers that products are safe.") (statement of Sen. Stevens); *id.* at S7869 ("This
legislation will make a real difference in protecting America's children and other consumers
from hazardous toys and other products.") (statement of Sen. Collins); *id.* at S7870 ("We need to
know our children's and grandchildren's toys are safe. . . . We need to know the products we buy
will not harm us or our children.") (statement of Sen. Levin).

In its brief, the CPSC does not argue that its interpretation advances the purposes of the law. Nor does it offer any alternative statutory objective. Instead, the CPSC argues that "the stated purpose of the law is not dispositive." CPSC Br. at 24. Plaintiffs do not argue that the statutory purpose is dispositive. But legislative purpose informs the statute's plain meaning, and an interpretation of the language that advances the goals of the law is certainly favored over one that undercuts those goals. *General Dynamics Land Sys., Inc., v. Cline*, 540 U.S. 581, 600 (2004) (legislative purpose gives the potentially ambiguous word "age," in the Age Discrimination in Employment Act, a definite meaning, where the statute is "structured and manifestly intended to protect the older from arbitrary favor for the younger"); *Fed. Election Comm'n v. Political Contributions Data, Inc.*, 943 F.2d 190, 196 (2d Cir. 1991) (rejecting agency interpretation that undermined statutory purpose). This is especially true in the context of remedial legislation intended to protect public health. *Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967) (citing "familiar canon of statutory construction that remedial legislation should be construed broadly to effectuate its purposes"); *Schiavone v. Pearce*, 79 F.3d 248, 256 (2d Cir. 1996) (same). Here, the CPSC has not disagreed that its reading subverts the statute's twin goals of protecting the public from exposure to potentially harmful consumer products and increasing consumer confidence in product safety.

The CPSC further claims that the phthalate ban need not advance the goals of the statute because the phthalate provision was the product of "compromise." CPSC Br. at 24-25. But the CPSC cites no evidence to show that there was any compromise on the central issue in this case – the effect of Congress's ban on sale and distribution of any children's product containing

certain phthalates after February 10 – let alone any compromise on the express consumer

protection purposes of the law articulated in 15 U.S.C. § 2051(b).[3]

     E.     <u>The Presumption Against Retroactivity Does Not Apply</u>.

The CPSC claims that "application of the phthalates ban to existing inventory would have

retroactive effect." CPSC Br. at 24. This is incorrect; the ban does not have retroactive effect.

Even if it did, Congress's intent to apply the ban to any children's product sold or distributed in

commerce after February 10 is clear and overrides the presumption against retroactivity.

The phthalate ban was enacted on August 14, 2008, and it goes into effect on February

10, 2009. Any items manufactured after the law was enacted are new inventory, not "existing

inventory." For these products, there can be no possible concern about retroactivity, because all

regulated parties were on notice of the law's effect after enactment. *See Landgraf v. USI Film

Prods.*, 511 U.S. 244, 269-70 (1994) (statute operates retroactively only if "the new provision

attaches new legal consequences to events completed *before its enactment*") (emphasis added).

With respect to products manufactured before August 14, 2008, the phthalate ban is

prospective because it prohibits their sale and distribution in commerce only after a 180 day

grace period. Even if the phthalate ban is construed to be retroactive as to products

manufactured before August 14, 2008, it is permissible because Congress's intent was clear.

Congress imposed an explicit prohibition on sale and distribution of any children's product

---

[3] In fact, the legislative history indicates that the compromise discussed in floor statements concerned the question of which particular phthalates should be included in which provisions of the ban. *See* 154 Cong. Rec. S7870 (daily ed. July 31, 2008) ("[A] compromise was reached earlier this week to ban three specific phthalates, and place an interim ban on three other phthalates while a formal health assessment is done.") (statement of Sen. Sununu); 154 Cong. Rec. H7582 (daily ed. July 30, 2008) ("The result is the bill before us where three specific phthalates are banned outright, and another three are temporarily prohibited while we do a comprehensive scientific study. That is the essence of compromise.") (statement of Rep. Barton).

containing the listed phthalates after the effective date.  15 U.S.C. §§ 2057c(a), (b)(1).  The presumption against retroactivity does not apply if Congress's contrary intent is clear, and therefore does not justify the CPSC's decision here.  *Landgraf*, 511 U.S. at 280 ("[T]here is no need to resort to judicial default rules" if "Congress has explicitly prescribed the statute's proper reach").

*     *     *

Plaintiffs' reading of the law gives full effect to the express terms of the phthalate provision, including its prohibition on sale and distribution in commerce, and provides a logical explanation for the use of the phrase "consumer product safety standard."  It is consistent with the title Congress gave to each part of the statute at issue, including sections 2057c ("Prohibition on sale"), 2057c(d) ("effect on State laws"), and 2058 ("Procedure for consumer product safety rules").  Plaintiffs' interpretation also advances the express and undisputed statutory purposes of protecting consumers and ensuring consumer confidence.  The CPSC's reading does none of this.  It disregards the statute's plain language, rendering the ban on sale and distribution in commerce a nullity.  It ignores the relevant section headings.  And it would significantly undermine the purposes of the statute by perpetuating children's exposure to phthalates in children's products well past the ban date and depriving consumers of any certainty that regulated products on store shelves after February 10 will be phthalate-free.  The Court should reject the CPSC decision as contrary to the plain language of the law.

II.     The Court Should Not Defer to the CPSC Decision.

    A.     The Statutory Language Is Unambiguous.

Because the statutory language is clear, the Court owes no deference to the challenged CPSC decision.  *General Dynamics*, 540 U.S. at 600 ("[D]eference to [an agency's] statutory

interpretation is called for only when the devices of judicial construction have been tried and found to yield no clear sense of congressional intent."). There is no need to defer when an agency "is clearly wrong." *Id*. The CPSC's claim that "some deference is always accorded to an agency's interpretation of a statute it administers," CPSC Br. at 20, is incorrect. *See id.*; *U.S. v. Morton*, 467 U.S. 822, 834 (1984) (no deference when agency interpretation is "plainly contrary to the statute").

The judiciary is the ultimate arbiter of the meaning of statutory language. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 446 (1987) ("pure question of statutory construction" is "for the courts to decide"). To ascertain Congressional intent, the Court should look to the statutory text, canons of construction, legislative history, and the purposes of the act. *General Dynamics*, 540 U.S. at 590, 600; *Mizrahi v. Gonzales*, 492 F.3d 156, 158 (2d Cir. 2007). Even if statutory language is ambiguous, the Court should take into account its "structure, purpose, and history" to resolve the ambiguity before considering any deference to the agency's interpretation. *Cohen v. J.P. Morgan Chase & Co.*, 498 F.3d 111, 120 (2d Cir. 2007) (quoting *General Dynamics*, 540 U.S. at 600). As explained above, considering all of these factors, there is only one plausible reading of the phthalate ban – that it forbids sale and distribution in commerce of any children's product containing the listed phthalates beginning on February 10, 2009, regardless of the date of manufacture. That should end the inquiry. *Chevron U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842-43 (1984).

    B.    The Court Should Reject the CPSC's Interpretation As Unpersuasive.

Even if the phthalate prohibition were ambiguous, and if the text, purpose, and structure of the Act did not resolve that ambiguity, the CPSC decision – an opinion letter from the agency's General Counsel – is entitled to "respect" only to the extent that it is persuasive.

*Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000) ("[I]nterpretations contained in formats such as opinion letters are 'entitled to respect' under our decision in *Skidmore v. Swift*, 323 U.S. 134, 140 (1944), but only to the extent that those interpretations have the 'power to persuade,' *ibid.*"); *Catskill Devel., L.L.C. v. Park Place Enter. Corp.*, 547 F.3d 115, 127 (2d Cir. 2008) (agency interpretation in an opinion letter authored by deputy general counsel "is entitled to deference only to the extent that it has the power to persuade us").

The CPSC implies that its challenged decision may be entitled to enhanced, or *Chevron,* deference because the CPSC is the "expert agency" charged with enforcement and implementation of the CPSIA. CPSC Br. at 20. This is not so. Congress did delegate to the CPSC the authority to promulgate regulations implementing the Act. *See* 15 U.S.C. § 2051 note ("The Commission may issue regulations, as necessary, to implement this Act and the amendments made by this Act."). But the CPSC did not exercise that authority here, and therefore cannot claim the greater level of deference that might follow if it had. Rather than conducting a rulemaking to promulgate the statutory interpretation at issue in this case, the CPSC announced its opinion in a letter, with no public notice and comment, no response to comments, and none of the other formal deliberations that attend a rulemaking. As the Supreme Court ruled: "We hold that administrative implementation of a particular statutory provision qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, *and that the agency interpretation claiming deference was promulgated in the exercise of that authority*." *U.S. v. Mead Corp.*, 533 U.S. 218, 226-27 (2001) (emphasis added); *see also Rotimi v. Gonzales*, 473 F.3d 55, 57 (2d Cir. 2007) (agency decision not entitled to *Chevron* deference where it was not promulgated under agency's authority to "make rules carrying the force of law") (internal quotation omitted). The CPSC's

failure to promulgate a rulemaking consistent with its delegated authority defeats any claim to *Chevron* deference.

The Supreme Court in *Skidmore* assessed the merits of an agency's interpretation of ambiguous statutory language based on "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore*, 323 U.S. at 140. The CPSC decision is not persuasive and should be rejected under this test.

First, the CPSC decision lacks evidence of thorough consideration. The decision was published in an informal opinion letter, with no public process. The absence of public notice and comment denied the CPSC the opportunity to test and refine its conclusions after full consideration of all relevant issues. *See Boykin v. KeyCorp*, 521 F.3d 202, 208 (2d Cir. 2008) (declining under *Skidmore* to adopt an agency interpretation that was not "thoroughly considered").

Second, the CPSC's reasoning is not valid. The decision effectively deletes key terms from the statute, giving no meaning to the statute's ban on sale and distribution of children's products containing phthalates after the effective date. *See Cartoon Network LP v. CSC Holdings, Inc.*, 536 F.3d 121, 129 (2d Cir. 2008) (because agency interpretation "does not explain why Congress would include language in a definition if it intended courts to ignore that language, we are not persuaded" to defer under *Skidmore*). The CPSC decision also wrongly applies to the phthalate prohibition imposed by Congress a statutory term that governs only *agency* rulemaking procedures. *See supra* at 6-10; *see also Catskill Devel.*, 547 F.3d at 127 (rejecting agency interpretation in opinion letter that is "inconsistent with congressional design").

Finally, the CPSC decision is unpersuasive because it would defeat rather than implement the express purposes of the underlying law. Under the CPSC's interpretation, children's toys and child care articles containing phthalates could be manufactured and stockpiled without limit until February 10, 2009, and sold thereafter, anywhere in the United States, for an indefinite period of time. For these products, there would be no ban on sale or distribution in commerce, ever. The decision thus would prolong the harmful exposures Congress meant to eliminate and destroy the consumer confidence Congress meant to ensure.

The most rational way to read the phthalate prohibition in the CPSIA is that Congress gave regulated parties 180 days to move existing products through the stream of commerce, and then imposed certainty by prohibiting manufacture, sale, distribution in commerce, and import after that date. The Court should reject the CPSC's contrary, unpersuasive reading of the law. *Christensen*, 529 U.S. at 587 (rejecting agency interpretation contained in opinion letter as unpersuasive).

## CONCLUSION

For the reasons set forth above and in their prior brief, plaintiffs urge the Court to grant their motion for summary judgment and deny defendant's cross-motion for summary judgment.

Respectfully submitted,

*/s/ Mitchell S. Bernard*
Mitchell S. Bernard (MB 5823)
Aaron Colangelo
Avinash Kar
Natural Resources Defense Council
40 West 20th Street
New York, New York 10011
(212) 727-2700

Counsel for Plaintiffs

Of Counsel:

Brian Wolfman
Public Citizen Litigation Group
1600 20th Street, NW
Washington, DC 20007

Dated:  January 16, 2009

**CERTIFICATE OF SERVICE**

I hereby certify that I caused to be served a true and correct copy of this Reply in Support of Plaintiffs' Motion for Summary Judgment and Opposition to Defendant's Cross-Motion for Summary Judgment on the following counsel for defendant, by email and FedEx, on January 16, 2009.

Beth Goldman, AUSA
U.S. Attorney's Office
Southern District of New York
86 Chambers Street
New York, NY 10007

*/s/ Mitchell S. Bernard*
Mitchell S. Bernard